353 So.2d 379 (1977)
Salvador LOCHBAUM
v.
James V. BOWMAN et al.
No. 8409.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1977.
Rehearing Denied January 11, 1978.[*]
Writ Refused February 17, 1978.
*380 Wiedemann & Fransen, Lawrence D. Wiedemann and A. Remy Fransen, Jr., New Orleans, for plaintiff-appellee.
Philip K. Jones, Marshall W. Wroten, Robert J. Jones and Doran & Kivett, William J. Doran, Jr., Baton Rouge, for defendant-appellant, State of La., Dept. of Highways.
Before REDMANN, LEMMON, GULOTTA, SCHOTT and BEER, JJ.
LEMMON, Judge.
The State Department of Highways has appealed from a judgment holding it solidarily liable for damages sustained by plaintiff in an intersectional collision. The liability issue involves questions of the Department's duty to maintain traffic control signals and the relationship between the breach of that duty and plaintiff's injuries.
The accident occurred at 6:20 a. m., shortly after daybreak, on a clear, dry day at the intersection of Airline Highway and Clearview Parkway in Jefferson Parish. At that point Airline Highway was a divided multilane highway, with a narrow neutral ground separating the westbound and eastbound lanes of traffic. For eastbound traffic going into the City of New Orleans there were two lanes of travel and a third lane for vehicles turning left at the traffic light which controls the intersection. Clearview Parkway was also a multilane thoroughfare, and there were several lanes for northbound traffic, in addition to a left turning lane at the light controlling the intersection. Just prior to the accident defendant James Bowman was traveling north on Clearview Parkway, intending to make a left turn onto Airline Highway, and plaintiff was traveling east on Airline Highway in the left traffic lane (nearest the neutral ground).
The traffic light controlling the intersection had been malfunctioning since at least 5:30 that morning, when the disorder was reported to the Department of Highways. The light was stuck on green for Airline Highway traffic and on red for Clearview Parkway traffic.
As Bowman approached the intersection, he stopped in obedience to the red light behind "a couple of cars" in his lane. As the motorists on Clearview realized that the light was malfunctioning, they proceeded to cross cautiously on the red light. After five or six minutes, Bowman was first in line. He looked to his left and saw no traffic for at least 1,000 feet, then looked to his right and waited for a single westbound motorist on Airline (apparently in the left turn lane) to come to a stop, then proceeded out into *381 the intersection, where he was struck in the left eastbound traffic lane of Airline in the area of his left front door by plaintiff's vehicle. Bowman was not aware of an oncoming car to his left until he heard the screeching of brakes just prior to the collision.
Bowman was obviously negligent.[1] The issues on appeal are whether the Department was negligent and whether that negligence was a legal cause of the accident.
A governmental authority that undertakes to control traffic at an intersection has a duty to the motoring public to exercise a high degree of care in maintaining the devices installed for traffic control. The fact that the Department failed to discharge this duty was overwhelmingly proved.
The record is replete with evidence of chronic malfunctioning of the traffic light at this intersection.[2] The electrician foreman blamed the inordinate number of breakdowns on improper transportation and handling of the controllers in shipment to and from Baton Rouge for repair. Whatever the cause, the record establishes amply that there were considerable problems of long standing at this intersection, problems that should have been prevented by proper maintenance procedures.
Furthermore, as to the particular problem on the day of this accident, notice was provided to the Department at least 50 minutes before the accident that the traffic light at the highly traveled intersection of two main thoroughfares was malfunctioning.[3] Nevertheless, there was no attempt to notify law enforcement personnel to direct traffic until repairs could be accomplished. The Department's radio operator simply notified the service man on call, who got dressed, went to the office to pick up tools, and finally arrived on the scene after the accident had occurred.
We conclude that the Department was negligent both in failing to properly maintain the traffic signal at the intersection and in failing to take steps when notified of the malfunction to alert the proper authorities so that traffic at the intersection could be directed manually until repairs could be accomplished.
Liability is not always imposed, however, when damages occur following negligent behavior. The determination of whether liability should be imposed depends upon the facts and circumstances of each case. The initial inquiry in the determination is whether the negligent act or omission was a cause-in-fact of the accident, which is a "but for" inquiry. In the present case the accident, more probably than not, would not have occurred as it did if Bowman had simply had to wait for a green light to signal his turn onto Airline Highway. One can reasonably conclude that, but for the failure of the traffic signal to operate properly and direct his left turn, the accident would not have occurred as it did. Therefore, the Department's failure to maintain the light in proper operation or to have the proper authorities specifically directing traffic after being notified of the malfunction was a cause-in-fact of this accident.
The more difficult inquiry is whether the risk created (that a motorist, knowing the signal was inoperative, would enter the intersection without first ascertaining that it was safe to do so) was within the scope of protection intended by the imposition of the duty to maintain traffic signals properly.
The requirement of diligent and proper maintenance of traffic signals is designed to prevent creation of unusual risks which often occur when traffic signals malfunction. In the present case, however, the Department's breach of duty did not create *382 an unreasonable risk of harm under the particular circumstances of this case.[4]
Although the malfunction deprived Bowman of an opportunity to enter the intersection with a red light controlling Airline Highway traffic, one could not reasonably say that the malfunction was associated with Bowman's utter failure to ascertain before entering the intersection that the crossing could be made safely. He was aware of the malfunction before he attempted to enter the intersection, and he was not trapped by the malfunction into an extraordinary position of danger. Perhaps if traffic had become considerably congested because of the malfunction, so that Clearview motorists foreseeably might take unreasonable chances to accomplish the crossing, a greater relationship or association would be established between the malfunctioning light and plaintiff's injury. But the evidence established there were only "a couple of cars" stopped for the constant red light when Bowman arrived, and there is absolutely no relevant evidence in this record that traffic congestion prompted Bowman to take impetuous action and attempt to cross at an unsafe time.[5] Indeed, the record clearly established that plaintiff's car was the only vehicle approaching from Bowman's left when he entered the intersection and that there was only one car approaching from his right.[6]
We conclude there is no "ease of association" between the duty breached by the Department and the injury to plaintiff. See Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). The Department's breach merely necessitated that Bowman enter the intersection with care rather than with the right of way. His failure to use care was in no way related to the Department's breach of duty, which we decline to classify as a legal cause of the accident. Bowman's substandard driving was the sole legal cause.
Accordingly, the judgment of the trial court is reversed in part, and it is now ordered that plaintiff's suit against the State of Louisiana, Department of Highways be reversed. Each party is to bear his own costs.
REVERSED IN PART AND RENDERED.
GULOTTA, J., dissents and assigns reasons.
BEER, J., dissents and assigns reasons.
GULOTTA, Judge, dissenting.
I dissent from the majority's decision insofar as it declines to classify as a legal cause of the accident the breach of duty to maintain the traffic signal and reverses judgment against the State of Louisiana, Department of Highways.
As pointed out by the majority, the Department breached its high duty of care. After repeated problems with the traffic signal for several months, the Department was notified of the malfunction at 5:30 a. m. on the day of the accident, but failed to remedy the defect timely. Even if repairs to the signal could not have been accomplished before 6:20 a. m. (the time of the accident), the Department, at the very *383 least, failed to notify law enforcement officers immediately upon receiving the complaint of the malfunction. Had a law enforcement officer been dispatched to the scene immediately following the complaint, traffic at this heavily-traveled intersection could have been manually directed until a temporary flasher was installed or the repairs were completed. The work sheet of November 14, 1973, the date of the accident, indicates that a flashing signal was placed at the intersection at 7:00 a. m., following the accident, and that the traffic signals were put into effect again at 10:30 a. m.
Unlike the majority, however, I conclude that this breach of duty created the risk of injury in this particular case. Defendant, in attempting to make a left turn in order to proceed in a westerly direction on Airline Highway, was required, without the aid of the signal light, to cross the Airline lanes (carrying traffic from two directions) and the southbound lanes of Clearview (carrying traffic approaching him). Significantly, the evidence indicates that Bowman, because he was preoccupied with traffic traveling in a westerly direction on Airline, failed, albeit negligently, to correctly judge the approach of plaintiff's vehicle traveling in an easterly direction. As Bowman himself testified:
"I looked to the left andnotI didn't believe this car [Lochbaum's] was close enough to be of any danger to me. So there was a car moving, coming from New Orleans [to Bowman's right]. And so I watched him to make sure he stopped, which was only a couple of seconds for a car to stop. He was close to the intersection."
After waiting for this vehicle traveling westerly on Airline to stop, Bowman moved forward and was broadsided on his left by the Lochbaum vehicle traveling easterly. This testimony supports the trial judge's statement in oral reasons that immediately before impact Bowman was "particularly worried about the vehicle that was traveling in a westerly direction". Though traffic may have been light at the intersection at the time of the accident, the evidence clearly indicates that Bowman's attention to the approach of the Lochbaum vehicle was diverted by the vehicle approaching from the opposite direction on Airline. Had the traffic signal not malfunctioned, Bowman would not have been forced to cross the intersection unaided by a light in his favor and to look in several directions at once, diverting his vision to one direction at the expense of his concentration on plaintiff's vehicle approaching from the opposite direction. Under these circumstances, I conclude, as the trial judge apparently did, that there is an "ease of association" between plaintiff's injury and the Department's breach of duty. See Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620, 622 (1972). Accordingly, I conclude the Department's negligence was a legal cause of the accident resulting in injury to plaintiff.
I further reject the Department's contention that its negligence is passive or remote and that Bowman's negligence is the sole proximate cause of plaintiff's injury. Though the record clearly supports the trial judge's finding that defendant driver was negligent in crossing the intersection, the driver's negligence does not relieve the Department from liability. I am in agreement with the trial judge's conclusion that both defendants were concurrently negligent. In Vidrine v. General Fire and Casualty Company, 168 So.2d 449 (La.App. 3d Cir. 1964), the court addressed itself to an identical argument under circumstances similar to those before us. The court stated, supra, at page 454:
"Thus, in the present instance, the failure of the municipal employees to remedy the defective traffic signal created an undue risk of harm to traffic at the intersection. The intended purpose of the duty was to prevent accidents such as that which occurred herein. The negligent failure to perform this duty was therefore a concurrent proximate cause of the accident, produced by a combination of it and of the negligence of Mrs. Vidrine in carelessly entering the intersection without adequate observation and *384 care in the face of the out-of-order traffic signal."
See also Bourgeois v. State, through Department of Highways, 255 So.2d 861 (La. App. 4th Cir. 1971).
For these reasons, I respectfully dissent.
BEER, Judge, dissenting in part.
I agree with the majority's opinion regarding Bowman's negligence and, also, their finding of negligence on the part of the Louisiana Department of Highways (such negligence being a cause in fact of this accident). I have trouble concluding that there is no "ease of association" between the duty breached by the Department and the injury to plaintiff. Though this is a close call, and I can readily appreciate the majority's view, I am more inclined to a thesis which upholds that call as it was made by the trial judge, absent manifest error. For this reason, I respectfully dissent from that portion of the opinion reversing the trial court's judgment against the Louisiana Department of Highways.
NOTES
[*] Gulotta, J., voted to grant.
[1] He and his insurer did not appeal from the judgment casting him for damages.
[2] In addition to numerous other problems, the master controller (which was faulty on the day of the accident) had to be replaced seven times between July 23, 1973 and November 14, 1973, and minor control switches had to be replaced eleven times.
[3] During a 1973 vehicle count at the intersection, 256,000 vehicles passed in the eight-hour peak traffic period.
[4] Some malfunctions, such as a green light facing both directions, create a risk of harm which amounts to a trap, since neither motorist is aware before entering the intersection that the other will not yield the right of way. This particular malfunction (a constant green light for Airline traffic and a constant red for Clearview) resulted in a right of way situation identical to that which would have been in effect if stop signs controlled Clearview traffic and placed a burden on motorists on Clearview to enter the intersection with extreme care.
[5] Evidence that this intersection is one of the most heavily traveled in Jefferson Parish was relevant to the Department's duty to take action immediately upon notice of a malfunction, but was not relevant to proof of traffic conditions existing at the time of the accident.
[6] If the evidence showed that traffic was heavily congested and that motorists on Clearview were recklessly darting across the intersection every few seconds, then a serious question of contributory negligence would have been presented, since plaintiff arguably should have noticed such circumstances in exercising reasonable lookout.