380 So.2d 201 (1980)
Randall Paul GASPARD, Plaintiff-Appellee,
v.
Weston J. STUTES et al., State of Louisiana, Department of Transportation, City of Abbeville, Defendants-Appellants.
No. 7409.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1980.
*202 John W. King, Baton Rouge, for defendants-appellants.
Voorhies & Labbe, E. Greg Voorhies, Lafayette, Caffery, Duhe, Oubre & Gibbens, John Blackwell, New Iberia, Cooper & Sonnier, Calvin W. Woodruff, Abbeville, for plaintiff-appellee.
Before FORET, CUTRER and DOUCET, JJ.
CUTRER, Judge.
This is a tort suit arising from an intersectional collision. Randall Paul Gaspard and his insurer, Southern Farm Bureau Casualty Insurance Company (Southern Farm Bureau), seek to recover property damages and medical expenses from Weston Stutes, the City of Abbeville, and the State of Louisiana through the Department *203 of Transportation and Development (Department). The trial court awarded judgment in favor of Gaspard and Southern Farm Bureau, and against the Department for the sum of $1,755.88. Gaspard's demands against the City of Abbeville and Stutes were dismissed. The Department appeals.
The issues raised on appeal are:
(1) Was the Department negligent in failing to notify the Abbeville Police Department of a malfunctioning light so that traffic could be directed by the police at the intersection where the collision occurred;
(2) Was Weston J. Stutes negligent in proceeding into the intersection; and
(3) Was Theresa Gaspard, the driver of the Gaspard vehicle, guilty of negligence.
The accident giving rise to the suit occurred on January 9, 1977, at approximately 4:07 P. M., in Abbeville, Louisiana. Immediately prior to the accident, Stutes was proceeding in his pickup truck in an easterly direction on St. Victor Street, a two lane, two-way street. At approximately the same time, Mrs. Gaspard, plaintiff's wife, was proceeding in a northerly direction on St. Charles Street, a two lane, one-way street. The accident occurred when the vehicles collided at the intersection of St. Victor and St. Charles Streets.
Traffic at the intersection was controlled by three semaphore traffic signals. A four-way traffic signal was located above the center of the intersection, which signaled traffic approaching on both St. Charles and St. Victor. A two-way signal (in the northeast quadrant of the intersection) signaled northbound traffic on St. Charles Street and eastbound traffic on St. Victor. The undisputed facts reveal, however, that this latter two-way signal, for some unknown reason, had been turned 90 degrees clockwise prior to the accident and, in its new position, signaled eastbound traffic on St. Victor, but no signal appeared for northbound traffic on St. Charles. In this position, northbound traffic on St. Charles would get no signal from this two-way light as such traffic would be facing the back side of the signal which was blank. Such traffic on St. Charles would be signaled only by the four-way signal.[1]
This misalignment of the two-way light produced the following effects on the drivers in this suit. As Mrs. Gaspard approached the intersection, the only signal she could see would be the four-way signal near the middle of the intersection. If the four-way light showed green for Mrs. Gaspard on St. Charles, the two-way light, at the same time, would also show green for Stutes on St. Victor. The four-way light, at that time, however, would be reflecting a red light for eastbound traffic (Stutes) on St. Victor.
Prior to the accident, at (either 3:00 or) 3:27 P.M., the Lafayette District Office of the Department was notified that a traffic signal at the intersection of St. Victor and St. Charles Streets in Abbeville was malfunctioning. A repair crew was dispatched from Lafayette to investigate and repair the problem. The repair crew arrived at the intersection in Abbeville at 4:21 P.M., several minutes after the accident, and repaired the light which had rotated out of position. At no time following its receipt of information regarding the malfunctioning signal did the Department office in Lafayette make any attempt to inform the Abbeville Police Department of the problem.
The trial judge found that the Department's failure to notify the Abbeville Police Department of the problem was negligence and such negligence was the proximate cause of the accident. He therefore found only the Department liable to the plaintiffs and judgment was rendered accordingly.

THE DUTY OF THE DEPARTMENT
We first consider whether the Department is liable for damages. The Department takes the position that its duty is to *204 repair, with dispatch malfunctioning traffic signals upon actual or constructive notice. The Department argues that its duty does not extend to the notifying of local police authorities as it cannot compel such authorities to respond to such notice. We disagree with this position.
It is well settled that a governmental authority that undertakes to control traffic at an intersection must exercise a high degree of care for the safety of the motoring public. Lochbaum v. Bowman, 353 So.2d 379 (La.App. 4th Cir. 1978), writs den., 354 So.2d 1380 (La.1978); McDaniel v. Welsh, 234 So.2d 833 (La.App. 1st Cir. 1970).
In the case of Lochbaum v. Bowman, supra, an accident occurred at an intersection controlled by a malfunctioning traffic signal. The court concluded that the Department of Highways, which was responsible for the maintenance of the traffic signal, was negligent in failing to alert the local police authorities so that traffic could be directed manually until repairs could be made.[2]
We agree with the position taken in Lochbaum that it is the duty of the Department to notify local police authorities of a malfunctioning traffic signal at an intersection in order that traffic at the intersection can be manually directed until the repairs can be made. This is consistent with the legal duty to exercise a high degree of care in maintaining traffic signal devices under its control. Furthermore, Francis Wyble, Assistant District Maintenance Engineer, testified that it was the policy of the Department to notify local police authorities of any serious malfunction of a traffic signal.
Sergeant Earl LeBlanc, a member of the Abbeville Police Department, testified that two units were on patrol at the time of the accident. He received a call reporting the accident at 4:07 P.M. and he arrived at the scene four minutes later to investigate and to direct traffic. He also stated that, as a matter of policy, when the Abbeville City Police receives a report of a malfunctioning light, an officer is immediately dispatched to the intersection of the malfunctioning light. Such officer turns the light off at the switch box and directs traffic manually until the malfunction is remedied. No such call from the Department was received by the Abbeville Police Department before the accident in question.
From this testimony, we conclude that had the Department notified the Abbeville Police Department of the malfunction problem when they received a report of same, an officer could have been timely dispatched to the scene to manually direct traffic. The effect of the misalignment of the light would have been alleviated. The failure of the Department to notify the Abbeville, Police Department of the problem was a cause-in-fact of the accident. The risk created, under the circumstances presented, was within the scope of the duty owed by the Department. The Department created a liability to plaintiffs for the breach of such duty.

ALLEGED NEGLIGENCE OF THE DRIVERS
The Department argues that both drivers should have exercised greater care in entering the intersection.
Stutes testified that he had gone through this intersection around noon of that day as he left his work nearby. He had noticed no malfunction at that time. He stated that as he approached the intersection, just prior to the accident, he was traveling in his right lane, looking at the two-way light which was straight ahead of him, and reflecting a red signal. He brought his vehicle to a stop very close to the intersection. In order for him to see to his right along St. Charles, it *205 was necessary to stop close to the intersection to be able to see around an obstruction located on that corner. The two-way signal, straight ahead of him, turned green and he started into the intersection where he collided with Mrs. Gaspard's vehicle. Stutes testified that he did not see Mrs. Gaspard entering the intersection until it was too late to avoid the accident. He stated that he did not observe the four-way light above and to his left as he stopped at the intersection. The first Stutes knew of a conflict between the four-way and the two-way signals was after the accident when he and the police began checking the signals and found the misalignment of the two-way signal.
Mrs. Gaspard testified that as she approached the intersection, the four-way signal was the only signal reflecting a light to control her movement. As she approached the intersection, this four-way light was reflecting green. She proceeded into the intersection where the collision occurred. She did not see Stutes entering the intersection until it was too late to avoid the accident. She was not aware of the misalignment of the two-way light until after the accident.
The law requiring a motorist's duty when approaching an intersection controlled by a semaphore signal, who is favored by a green light, has been recently set forth as follows in the case of Champagne v. McDonald, 355 So.2d 1335 (La.App. 3rd Cir. 1978):

"A motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right-of-way. Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (La.1964); Carter v. New Orleans Public Service, Inc., 305 So.2d 481 (La.1974). The favored motorist is not obligated to look to his left or right before entering the intersection. Correge v. Webb, 284 So.2d 355 (La.App. 4th Cir. 1973, writ refused); Bradley v. Allstate Insurance Co., 307 So.2d 132, supra; Keyser v. Triplett, 322 So.2d 294 (La.App. 1st Cir. 1975, writ refused); Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir. 1976, writs refused), and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. Bradley v. Allstate Insurance Co., supra; Bourgeois v. Francois, supra. All that is required is that the favored motorist maintain a general observation of the controlled intersection. Jordan v. Great American Insurance Company, 248 So.2d 363 (La.App. 4th Cir. 1971); Modica v. Manchester Insurance & Indemnity Co., 284 So.2d 791 (La.App. 4th Cir. 1973)."

Under the particular and unusual circumstances presented herein, where both drivers were proceeding into the intersection on a green light, with neither driver having any reason to know that a misalignment of signal lights existed, and with both drivers believing that the other driver had a red light and would stop, we conclude that the trial judge correctly determined that both drivers were free of negligence upon entering the intersection. The record does not support the Department's position that the drivers failed to exercise the degree of care required of them by the law as set forth above.
The Department also argues that Stutes had knowledge of facts which would put him on notice that the signal would rotate out of position. The Department contends that Stutes was negligent by proceeding into the intersection with such knowledge.
The record simply does not support the Department's argument that Stutes had knowledge of any facts which would put him on notice that the two-way light may have rotated out of position. The fact that Stutes had been previously told that the two-way light had wires placed upon it to keep it from being affected by wind did not put Stutes on notice that the light would rotate out of position, causing a misalignment as that existing at the time of the accident.
*206 The case of Bourgeois v. State, Through the Dept. of Highways, 255 So.2d 861 (La. App. 4th Cir. 1972), cited by the Department's counsel, is not applicable. In that case, the driver, only hours before the accident, had been through the same intersection and was aware of the malfunctioning light prior to her accident. No evidence appears in this record that Stutes knew or should have known that the traffic signal was misaligned as he entered the intersection.
For the reasons assigned, the judgment of the trial court is affirmed. Costs are assessed to the defendant-appellant.
AFFIRMED.
NOTES
[1] A one-way signal controlled the westbound traffic on St. Victor. This signal, however, does not enter into the issues of this suit.
[2] The court, however, found that under the circumstances of Lochbaum, the negligence of the Department of Highways was not a legal cause of the accident. In that case, the light facing one of the drivers continuously reflected green while the other light facing the other driver continuously reflected red. The court found that the breach of duty by the Department did not create an unreasonable risk of harm that one driver would not use care in entering the intersection when faced with a light which was continuously on red.