450 So.2d 386 (1984)
Leon JOHNSON, Sr., et al.
v.
STATE of Louisiana, et al.
Linda Fay JOHNSON
v.
STATE of Louisiana, et al.
Nos. 83 CA 0551, 83 CA 0591.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
Writ Denied May 25, 1984.
*388 Fernand L. Laudumiey, III, New Orleans, for plaintiff Linda Fay Johnson.
Kenneth E. Barnette, Baton Rouge, for defendant-appellee Prudential Property & Cas. Ins. Co.
Carl J. Barbier, New Orleans, for plaintiff-appellant Leon Johnson, Sr. individually & in his representative capacities as administrator of the Estate of his deceased wife, Doretha Johnson and as natural tutor of his minor children Bernard Johnson, Cynthia Johnson, Michael Johnson, Robert Johnson, and Wanda Johnson, Doris Marie Johnson, Betty Raye Johnson, Leon Johnson, Jr.
Alexis A. St. Amant, Baton Rouge, for plaintiff James Monahan.
William J. Doran, Baton Rouge, for defendant-appellee State of La., through the Dept. of Transp. and Development.
Donald R. Smith, Baton Rouge, for defendant-appellee James Monahan.
Before COVINGTON, COLE and SAVOIE, JJ.
COVINGTON, Judge.
These are tort actions. In number 83 CA 0591, the plaintiff-appellant, Linda Fay Johnson, was the driver of one of the two vehicles. She allegedly suffered personal injuries. Also, she sued for damages for the loss of her mother, Doretha Johnson, who was a passenger in the car and died in the wreck. There were multiple defendants. All were dismissed, at plaintiff's cost. She appealed devolutively, only insofar as the court dismissed her suit against the State of Louisiana, Department of Transportation and Development.
In Number 83 CA 0551, Linda's father, individually and on behalf of five minor children, together with three major children, sued for damages arising out of Doretha Johnson's death. Additionally, one of the minors, Cynthia, and a major, Doris, sought damages they sustained as passengers in the car driven by their sister, Linda. Of the multiple defendants, all were dismissed except Prudential Property and Casualty Insurance Company, Linda's liability insurer. The plaintiffs appealed, devolutively, only as to the dismissal of the State of Louisiana, Department of Transportation and Development and as to quantum.
We have read the record carefully and find that the written reasons of the trial judge, as amended, correctly dispose of the factual and legal issues. They are attached as Exhibit A.
For the reasons assigned by the trier, which we adopt as our own, the judgments appealed are affirmed, at appellants' cost.
AFFIRMED.
SAVOIE J., concurs in part and dissents in part.
 EXHIBIT A
LEON JOHNSON, SR., ET AL SUIT NO. 221,671, DIVISION "I"
 19TH JUDICIAL DISTRICT COURT
VS. PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA, ET AL STATE OF LOUISIANA
 * * * * * CONSOLIDATED WITH * * * * *
LINDA FAY JOHNSON SUIT NO. 221,672, DIVISION "I"
 19TH JUDICIAL DISTRICT COURT
VS. PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA, ET AL STATE OF LOUISIANA
*389
 * * * * * CONSOLIDATED WITH * * * * *
JAMES P. MONAHAN SUIT NO. 226,820, DIVISION "I"
 19TH JUDICIAL DISTRICT COURT
VS. PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA, ET AL STATE OF LOUISIANA
 * * * * * CONSOLIDATED WITH * * * * *
PRUDENTIAL PROPERTY AND SUIT NO. 256,934, DIVISION "I"
CASUALTY INSURANCE COMPANY 19TH JUDICIAL DISTRICT COURT
VS. PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA, ET AL STATE OF LOUISIANA

WRITTEN REASONS FOR JUDGMENT
The above consolidated cases represent claims for damages arising from an intersectional collision at Blount Road and Scenic Highway on January 21, 1979, between a vehicle driven by Linda Fay Johnson and a vehicle driven by James P. Monahan.
At approximately 12:45 p.m. Linda Fay Johnson was operating her 1978 Oldsmobile in a westerly direction on Blount Road. Blount Road is a two-lane hardtop road running in an east-west direction. At the same time, James P. Monahan was operating his 1973 Chevrolet pickup in a southerly direction on Scenic Highway. Scenic Highway is a two-lane hardtop road running in a north-south direction. The intersection of Blount Road and Scenic Highway is controlled by three sets of semaphore lights. The location and operation of the lights are:
Set Number-1
This set is suspended over the intersection near the east side of Scenic Highway and Blount Road. This set has three lights (green, yellow, red) facing motorists traveling north on Scenic Highway and three lights (green, yellow, red) facing motorists traveling west on Blount Road.
Set Number-2
This set is suspended over the middle of the intersection of Scenic Highway and Blount Road. It has three lights (green, yellow, red) facing motorists traveling south on Scenic Highway and three lights (green, yellow, red) facing motorists traveling west on Blount Road.
Set Number-3
This set is suspended over the intersection near the west side of Scenic Highway and Blount Road. This set has three lights (green, yellow, red) facing motorists traveling east on Blount Road and three lights (green, yellow, red) facing motorists traveling south on Scenic Highway.
OPERATION OF LIGHTS
When set number-1 shows a green light for motorists traveling west on Blount Road, it also shows a red light for motorists traveling north on Scenic Highway. Simultaneously set number-2 will show green for motorists traveling west on Blount Road and red for motorists traveling south on Scenic Highway. Simultaneously set number-3 will show green for motorists traveling east on Blount Road and red for motorists traveling south on Scenic Highway.
When set number-2 shows a green light for motorists traveling south on Scenic Highway, it also shows a red light for motorists traveling west on Blount Road. Simultaneously set number-1 will show green for motorists traveling north on Scenic Highway and red for motorists traveling west on Blount Road. Simultaneously set number-3 will show green for motorists traveling south on Scenic Highway and red for motorists traveling east on Blount Road.
When set number-3 shows a green light for motorists traveling east on Blount Road, it also shows a red light for motorists traveling south on Scenic Highway. Simultaneously set number-1 will show green for motorists traveling west on *390 Blount Road and red for motorists traveling north on Scenic Highway. Simultaneously set number-2 will show green for motorists traveling west on Blount Road and red for motorists traveling south on Scenic Highway. (See Exhibit State-1.)
James P. Monahan testified he was traveling south on Scenic Highway at about 40-50 m.p.h. and as he neared the intersection of Scenic Highway and Blount Road he observed two green lights for his lane of traffic. As he got within 50-100 feet of the intersection, he saw Linda Fay Johnson enter the intersection westbound. He braked his vehicle but was unable to avoid the accident.
Linda Fay Johnson testified that she was traveling west on Blount Road at approximately 20 m.p.h. She stated that as she neared the intersection of Blount Road and Scenic Highway she saw a green light and continued across the intersection. She further stated she saw the Monahan vehicle out of the corner of her eye, but it was too late.
Cynthia Johnson, a passenger in Linda Fay Johnson's vehicle, testified she saw a green light before entering the intersection. Doris Johnson Barrow, a passenger in the Johnson vehicle, testified she was talking to her mother, Doretha Johnson, at the time of the accident and did not notice the semaphore signals. Doretha Johnson, another passenger in the Johnson vehicle was killed in the accident.
State Trooper John Futral testified he arrived at the scene of the accident at 12:51 p.m. After caring for the injured parties, he spoke to Ernest R. Grimes who told him that he was eastbound on Blount Road and had stopped for a red light at Blount Road and Scenic Highway. While stopped, he observed the accident. Mr. Grimes testified at the trial that the semaphore signals (set number-3) for eastbound traffic was red at the time of the accident. Trooper Futral stated he then observed the semaphore signals and found one set had been turned, apparently due to the wind, inasmuch as it had been gusty that morning. Trooper Futral's recollections and diagram reflected that set number-1 had been turned so that at the time of the accident the light normally facing motorists traveling north on Scenic Highway was now facing motorists traveling west on Blount Road. That the light normally facing motorists traveling west on Blount Road was now facing north over the north lane of Scenic Highway. With this arrangement, the nearest light to Linda Fay Johnson would be green and the next two would be red.
State Exhibit-1, a photograph of the scene of the accident, shows that Trooper Futral's recollections and diagram were erroneous. This photograph shows that portion of set number-3 normally facing motorists traveling south on Scenic Highway was at the time of the accident facing motorists traveling west on Blount Road.
Considering the photograph and testimony of Mr. Grimes, at the time of the accident the two lights nearest Linda Fay Johnson were red (set numbers 1 and 2) and the farthest light was green (set number-3). Further, the only light governing Mr. Monahan was a green light (set number-2). Mr. Monahan testified he thought he saw two green lights. These would be set number-2 and the reflection of set number-3. The green light on set number-3 did not have a shade over it, thus allowing Mr. Monahan to see a portion of it.
NEGLIGENCE
1. James P. Monahan
Our jurisprudence provides that a motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right-of-way. The favored motorist is not obligated to look to his left or right before entering the intersection and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. All that is required is that the favored motorist maintain a general observation of the controlled *391 intersection. Gaspard v. Stutes, 380 So.2d 201 (La.App. 3rd 1980).
As Mr. Monahan approached the intersection of Blount Road and Scenic Highway, he was favored by a green semaphore light. He stated he was between 50-100 feet from the intersection when he saw the Johnson vehicle coming across the intersection in front of him. He braked but was unable to avoid the accident.
This Court finds Mr. Monahan free of fault.
2. Linda Fay Johnson
Ms. Johnson testified she was traveling west on Blount Road at about 20 m.p.h. and after observing a green light facing her, she started across the intersection. Exhibits and testimony are conclusive that Ms. Johnson had two red lights and one green light facing her when she started across the intersection.
Gaspard v. Stutes, supra, involves an intersectional collision attributed to a malfunction of a semaphore light. In that case defendant, Mr. Stutes, was proceeding east in the right lane of St. Victor Street, a two-way street, and upon approaching the intersection of St. Victor Street and St. Charles Street, he noticed a two-way light straight ahead of him reflecting a red signal. He stopped his vehicle very close to the intersection. In order for him to see to his right along St. Charles, a one-way street for northbound motorists, it was necessary to stop close to the intersection to be able to see around an obstruction located on that corner. The two-way signal, straight ahead of him, turned green and he started into the intersection where a collision occurred. Mr. Stutes stated that he had not observed a four-way light above and to his left as he stopped at the intersection. The first he knew of a conflict between the four-way and the two-way signals was after the accident when the police found the misalignment of the two-way signal. The Court stated:
"Under the particular and unusual circumstances presented herein, where both drivers were proceeding into the intersection on a green light, with neither driver having any reason to know that a misalignment of signal lights existed, and with both drivers believing that the other driver had a red light and would stop, we conclude that the trial judge correctly determined that both drivers were free of negligence upon entering the intersection." (p. 205)
In Hardy v. State, Through Dept. of Highways, 404 So.2d 981 (La.App. 3rd Cir. 1981), writs denied December 14, 1981, two motorists entered an intersection with green lights facing them. The Court found that one set of lights was so turned as to give both drivers a green light. The defense suggested that Mr. Campbell should have been faced with one red and one green light. The Court stated:
"We do not believe this was the case. However, in Gaspard v. Stutes, supra, one of the drivers, Stutes, was faced with a red light and a green light because one particular light was misaligned. This Court affirmed the trial court's finding that both drivers were free of negligence in entering the intersection. Assuming that the contentions of the defense that there was at least one red light facing Campbell are correct, we nevertheless find under such circumstances that Campbell was not negligent." (p. 987)
The Court in Hardy has suggested that Gaspard v. Stutes, supra, stands for the proposition that a motorist entering an intersection with a red and green light is not negligent. This is erroneous. The Court in Gaspard specifically mentioned that Stutes was only aware of the green light and did not know of a red light until after the accident. The stopping position of Mr. Stutes at the intersection only allowed visibility of the two-way light.
This Court finds that an ordinary, reasonable person would stop at an intersection when facing two red and one green light. The fact that Ms. Johnson only saw the green light is further proof of her inattention in operating her automobile. *392 She is held to observe what she should have seen.
This Court finds Linda Fay Johnson guilty of negligent conduct in operating her vehicle.
3. State of Louisiana, Department of Transportation and Development
The various plaintiffs allege that the State of Louisiana was negligent and that this negligence was a cause in fact of the injuries.
Mr. Kenneth Macaluso testified that on January 21, 1979, he was employed by the State of Louisiana with the responsibility of fixing traffic lights under control of the State of Louisiana. He stated that at 10:30 a.m. on January 21, 1979, he received three notices of lights malfunctioning. One was at Louisiana Highway 1 and Dow Chemical in Iberville Parish, one at the bridge at Grosse Tete, Louisiana, and another at Scenic Highway and Blount Road. He stated he arrived at the La. 1 and Dow Chemical light at 11:15 a.m. and departed at 12:30 p.m., arrived at Grosse Tete bridge at 2:30 p.m. and departed at 3:30 p.m., and arrived at Scenic Highway and Blount Road at 3:30 p.m. and departed at 4:30 p.m. He stated he did not know the accident had happened several hours before his arrival. He testified that help was available if he needed it. Also, he stated he was not aware of any policy of the State of Louisiana in notifying police authorities to render assistance until a light can be remedied.
The Court in Gaspard said:
"It is well settled that a governmental authority that undertakes to control traffic at an intersection must exercise a high degree of care for the safety of the motoring public.
In the case of Lochbaum v. Bowman [353 So.2d 379 (La.App. 4th Cir.1978)], supra, an accident occurred at an intersection controlled by a malfunctioning traffic signal. The court concluded that the Department of Highways, which was responsible for the maintenance of the traffic signal, was negligent in failing to alert the local police authorities so that traffic could be directed manually until repairs could be made.
We agree with the position taken in Lochbaum that it is the duty of the Department to notify local police authorities of a malfunctioning traffic signal at an intersection in order that traffic at the intersection can be manually directed until the repairs can be made. This is consistent with the legal duty to exercise a high degree of care in maintaining traffic signal devices under its control." p. 204
The State of Louisiana had a duty to notify local police authorities of the malfunction of the traffic signal at Scenic Highway and Blount Road in order that traffic at the intersection could be manually directed until repairs could be made. Was the risk created, under the circumstances presented, within the scope of the duty owed by the State of Louisiana? I think not. I do not believe the duty of the State of Louisiana to the plaintiffs extended to guarding them against the consequences of a motorist proceeding through an intersection when faced with two red and one green light, especially when the two nearest lights are red.
Gaspard and Hardy, supra, are cases where motorists were only aware of green lights for all parties. I do not find the State of Louisiana, through the Department of Transportation and Development, created a liability to plaintiffs for the breach of its duty.
Inasmuch as this Court finds Linda Fay Johnson negligent, her claim against the State of Louisiana, through the Department of Transportation and Development, and James P. Monahan, suit no. 221,672, is dismissed at her cost. Further, Prudential Property and Casualty Insurance Company's claim as subrogee of the property claim of Linda Fay Johnson against the State of Louisiana, through the Department of Transportation and Development, and James P. Monahan, suit no. 256,934, is dismissed at its cost.
*393 DAMAGES
1. James P. Monahan
Mr. Monahan testified that after the accident he was taken to the Baton Rouge General Hospital by ambulance and treated in the emergency room. X-rays were negative. He was advised that he had no serious injury and told to return if any problems developed. Eight days later Mr. Monahan was treated by Dr. E.E. Jeffries, general practitioner. Dr. Jeffries found some limitation of motion in the neck and was of the impression that Mr. Monahan suffered a cervical strain, lumbar strain and multiple contusions. Mr. Monahan never returned for any medical treatment.
Mr. Monahan stated his injuries cleared within three to four weeks except for a sore shoulder which still plagues him. Also he expressed that he was suffering from a guilt syndrome since an occupant in the Johnson vehicle was killed.
This Court finds that $3,500.00 will adequately compensate Mr. Monahan's physical and mental injuries. Further, the Court will allow the following specials:

 1. Scott's Bluff Ambulance Service $90.00
 2. Baton Rouge General Hospital 160.00
 3. Dr. Jeffries 30.00
 4. Property damage to truck 2,075.00
 ========
TOTAL $2,355.00.

2. Leon Johnson, Sr.
Leon Johnson, Sr., and Doretha Johnson were married on September 9, 1954. Of this marriage nine children were born, four of whom were over 18 years of age and five under 18 years of age at the time of the accident and death of Doretha Johnson on January 21, 1979. Mr. Johnson described the family as a close-knit family, one that enjoyed doing activities together. He stated that even though there were nine children, the family would find time for picnics. According to Mr. Johnson his wife had occasional jobs to help support the family. Doretha Johnson was 41 years old at the time of her death.
The Court will award Leon Johnson, Sr., the sum of $35,000.00 for the loss of his wife. Further, the Court awards Leon Johnson, Sr., the sum of $2,356.35, representing funeral charges incurred as a result of the death of Doretha Johnson.
3. Leon Johnson, Jr., Betty Faye Johnson and Bernard Johnson are awarded $25,000.00 each for the loss of their mother, Doretha Johnson.
4. Leon Johnson, Sr., as Administrator of the Estate of Michael Johnson, Robert Johnson and Wanda Johnson, is entitled to $25,000.00 for each of the three minor children.
5. Cynthia Johnson
At the time of the accident, Cynthia Johnson was a passenger in the automobile driven by Linda Fay Johnson. After the accident Cynthia was taken to the Baton Rouge General Hospital where x-rays were taken of her face and hand. The x-rays were negative. Cynthia suffered some minor cuts on her wrist which were treated without sutures. On February 6, 1979, Cynthia visited Dr. Perez, general practitioner, complaining of headaches. Dr. Perez's diagnosis was that Cynthia was suffering from post-traumatic headaches. According to Cynthia, the headaches subsided approximately one month after her visit with Dr. Perez.
Inasmuch as Cynthia Johnson is now over 18 years old, judgment is rendered in her favor for the sum of $850.00 for injuries sustained in the accident. Further, Cynthia Johnson is awarded the sum of $25,000.00 for the loss of her mother.
As a result of Cynthia's injuries, the following special damages were incurred by her father, Leon Johnson, Sr., namely:

 1. Baton Rouge General Hospital $84.95
 2. Ambulance Service 50.00
 3. Dr. Perez 20.00.

Leon Johnson, Sr., is entitled to recover $154.95.
6. Doris Marie Johnson Barrow
Doris was a passenger in Linda Fay Johnson's automobile at the time of the accident. She suffered severe injuries and was initially treated at the Baton Rouge *394 General Hospital by Dr. L.J. Messina, orthopedic surgeon. Dr. Messina's medical report was submitted in lieu of his testimony. This report provided:
"We saw Doris J. Barrow initially in the Emergency Room of the Baton Rouge General Hospital on January 21, 1979. She had been involved in an automobile accident and sustained a Monteggia fracture-dislocation of her right forearm and a fracture of her right pubic ramus. She was hospitalized at that time where she underwent an open reduction and internal fixation for her forearm fracture and had conservative treatment for her pelvic fracture. She was discharged from the hospital about one week following her surgery in a long arm cast to help stabilize the reduction. Subsequently, she was readmitted to the Lady of the Lake Hospital where she had the internal fixation device removed from her forearm. Post-operatively we kept her in a short arm cast that was in place for one month.
We saw her last on the twenty-third of August and, at that time, she had no problems with her arm, full range of motion in her elbow joint and was having no complaints related to her pelvis, and we told her to return on a prn basis." (Exhibit Doretha Johnson-1)
As a result of the accident, Doris missed approximately seven months of employment with the Terrebonne Parish Police Jury where she was employed at a rate of $150.00 per week. Medical expenses incurred were:

 1. Jefferson Orthopedic Appliances,
 Inc. $48.36
 2. Ambulance Service 70.00
 3. Baton Rouge General Hospital 1,718.21
 4. Bone and Joint Clinic 1,325.00
 5. Doctors Memorial Hospital 763.44
 =========
 TOTAL $3,925.01.

Doris Marie Johnson Barrow is entitled to recover $9,500.00 for injuries sustained; $4,200.00 for lost wages and $3,925.00 for medical expenses. Further, she is entitled to recover $25,000.00 for the loss of her mother.
JUDGMENT
In suit no. 221,671 judgment is rendered:
in favor of Leon Johnson, Sr., for $37,511.30;
in favor of Leon Johnson, Sr., as Administrator of the Estate of Michael Johnson, Robert Johnson and Wanda Johnson, for $75,000.00, representing $25,000.00 for each child;
in favor of Leon Johnson, Jr., Betty Faye Johnson and Bernard Johnson for $25,000.00 each;
in favor of Cynthia Johnson for $25,850.00; and in favor of Doris Marie Johnson Barrow for $42,625.00.
In suit no. 221,672 judgment is rendered denying Linda Fay Johnson's claim against the State of Louisiana, through the Department of Transportation and Development, and James P. Monahan at her cost.
In suit no. 226,820 judgment is rendered in favor of James P. Monahan for $5,855.00.
In suit no. 256,934, judgment is rendered denying Prudential Property and Casualty Insurance Company's claim against State of Louisiana, through Department of Transportation and Development, and James P. Monahan. Also James P. Monahan's reconventional demand is dismissed. All costs assessed to Prudential Property and Casualty Insurance Company.
Judgments in suit nos. 221,671 and 226,820 are against Linda Fay Johnson and Prudential Property and Casualty Insurance Company, the judgment against Prudential Property and Casualty Insurance Company being limited to its policy limits of $10,000.00/$20,000.00. James P. Monahan and the State of Louisiana, through the Department of Transportation and Development, are dismissed as defendants. All costs are assessed against the defendants, Linda Fay Johnson and Prudential Property and Casualty Insurance Company.
All judgments shall bear legal interest from judicial demand.
Judgments will be signed accordingly.
*395 Baton Rouge, Louisiana, this 12th day of November, 1982.
 /s/ William Brown 
 JUDGE

AMENDED WRITTEN REASONS FOR JUDGMENT
In written reasons of November 12, 1982, this Court found: "Judgments in suit nos. 221,671 and 226,820 are against Linda Fay Johnson and Prudential Property and Casualty Insurance Company ...."
A review of the pleadings reflects that Linda Fay Johnson was not named as a defendant in suit 221,671; therefore, the written reasons are amended to provide that judgment in suit 221,671, is only against Prudential Property and Casualty Insurance Company.
Since the damages under suit no. 221,671 exceed the coverage afforded by Prudential Property and Casualty Insurance Company, this Court believes the proper disbursement of Prudential's $20,000.00 liability should be done on a pro rata basis for the claimants in suit nos. 221,671 and 226,820.
Judgment will be signed accordingly.
Baton Rouge, Louisiana, this 25th day of January, 1983.
 /s/ William Brown 
 JUDGE
SAVOIE, Judge, concurring in part and dissenting in part.
The trial court specifically found that the State breached its duty either to make prompt repairs following actual notice of the malfunction or to notify local police authorities of the malfunction. The trial court absolved the State from liability on the basis that the risk created was not within the scope of the duty owed by the State. I cannot agree with the trial court's holding.
Application of the duty-risk analysis set out in Everett v. State of Louisiana, Department of Transportation and Development, 424 So.2d 336 (1982) would show that the State is liable in this matter.
Four questions must be answered affirmatively under the duty-risk analysis for plaintiffs to recover:
1. That the act complained of was a cause-in-fact of the accident.
This must be answered affirmatively since the record is clear that without the mixed signals, Linda Fay Johnson would not have entered the intersection.
2. That the defendant, State of Louisiana, had a duty to protect these plaintiffs.
Again, the answer is affirmative. See Gaspard v. Stutes, 380 So.2d 201 (La. App.3rd Cir.1980); Hardy v. State, Department of Highways, 404 So.2d 981 (La. App.3rd Cir.1981).
3. That the defendant breached this duty to protect these plaintiffs.
The trial court found that the scope of the duty did not encompass the risk created. I emphatically disagree. Those who undertake to control traffic at an intersection must exercise a high degree of care. The breach of duty to warn the local authorities so that traffic at the intersection could be manually directed was a breach without which this accident would not have occurred. See Gaspard, supra.
4. Plaintiffs were harmed by the breach of duty owed.
The trial court found death and/or injury to all plaintiffs but allowed recovery only against Linda Fay Johnson, absolving the State from liability for the above-noted reason. However, since I find, contrary to the trial court, that the State's duty was within the scope of this accident, I also find its breach thereof was a cause of plaintiffs' harm.
Linda Fay Johnson, plaintiff-driver, however, is barred from recovery by her own acts. Her failure to observe the mixed signals and react reasonably thereto constituted substantial concurrent fault such as would bar recovery either under negligence or strict liability.
It was, in fact, the concurrent fault of the State and Linda Fay Johnson which *396 constituted the cause-in-fact of the accident. Therefore, I concur in the affirmation of the trial court's denial of Linda Fay Johnson's claim.
There was, however, no fault on the part of the guest passengers. Thus, they should be entitled to recovery against the joint tortfeasors, Linda Fay Johnson and the State of Louisiana, Department of Transportation and Development.
Insofar as the majority opinion affirms the decision of the trial court in favor of the State of Louisiana, Department of Transportation and Development and against plaintiffs-appellants, Leon Johnson, Sr., individually and as natural tutor of the minors, Michael Johnson, Robert Johnson, and Wanda Johnson, and Doris Mae Johnson, Betty Raye Johnson, Leon Johnson, Jr., Bernard Johnson, and Cynthia Johnson, I respectfully dissent.