499 So.2d 571 (1986)
John W. JOHNMEYER and Carolyn R. Johnmeyer, Plaintiffs-Appellees,
v.
Solomon D. CREEL, William Kenneth Bobbitt, d/b/a B & B Logging, and National Indemnity Company, Defendants-Appellants.
No. 18297-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
*572 Bodenheimer, Jones, Klotz & Simmons by Frank H. Thaxton, III, Shreveport, for defendants-appellants.
Plummer, Means & Burgess by Robert E. Burgess, Mansfield, for plaintiffs-appellees.
Before SEXTON and LINDSAY, JJ., and HEARD, J. Pro Tem.
SEXTON, Judge.
The defendants appeal an adverse judgment stemming from an automobile accident in which plaintiff John W. Johnmeyer's pickup truck collided with an 18-wheel logging truck being driven by Mr. Solomon D. Creel. Mr. Creel, as well as the owner of the logging truck, Kenneth Bobbitt d/b/a B & B Logging, and his insurer, National Indemnity Company, were made defendants. We reverse in part, amend in part, and affirm as amended.
The accident which gave rise to this litigation occurred on January 18, 1984, in downtown Mansfield, Louisiana. The site is a "T" intersection between Gibbs Street and Washington Avenue. Plaintiff, Mr. Johnmeyer, operating a pickup truck, entered the intersection where his truck was struck by the rear portion of defendant's trailer.
Plaintiff, Mr. Johnmeyer, alleged that as a result of the accident he sustained back and shoulder injuries, suffered lost profits from missed business opportunities, incurred expenses for repair of his truck and expenses for installation of a "wet kit" to his truck. Mrs. Johnmeyer, although not involved in the accident, joined in the suit to recover loss of consortium, service and society as a result of her husband's injuries.
Mr. Johnmeyer testified that the traffic light changed to green as he approached the intersection. As he entered the intersection, he observed the logging truck coming from the south. He stopped his truck and was attempting to put it in reverse gear when the trailer of the logging truck impacted with the front end of his pickup.
Mr. Creel testified that as he was approaching the intersection, the traffic light changed to caution. He indicated that he saw a brown pickup truck coming, noticed it wasn't going to stop, and attempted to avoid the accident by switching lanes.
Officer Atkinson of the Mansfield Police Department testified that when he responded to the wreck he found no witnesses other than the parties involved. He stated that Mr. Johnmeyer told him that he was proceeding with a green light into the intersection when the 18-wheeler swerved to miss him but the trailer tires caught the front of his truck. He also indicated that Mr. Creel stated that the light turned too quickly and he was unable to stop his vehicle. The officer received no approximate speed estimations from either party. He issued Mr. Creel a citation at the scene for running the red light.
The trial court ruled that the accident was a result of the negligence of Mr. Creel *573 and found him one hundred percent at fault. Judgment was awarded in favor of Mr. Johnmeyer in the lump sum amount of $36,963.69, which included general damages, lost profits, medical expenses and installation of a "wet kit" to his truck. Mrs. Johnmeyer apparently recovered $1,500 for loss of consortium which we assume was included in the total judgment.[1] The trial court rejected Mr. Johnmeyer's claim for repairs to his old truck.
Because the trial court assigned a lump sum judgment, we have had difficulty determining the award for each item of damages in this case. At the conclusion of the evidence and after ruling from the bench on the question of fault, the trial court stated that it was awarding "the damages that he's prayed for in every respect on the lost profits, as well as the expenses in hiring Mr. Prudhomme to install his wet kit." The court also stated that the medical expenses "are recoverable" and asked for authorities "on an award for pain and suffering and/or loss of consortium."
Plaintiff prayed for total lost profits in the amount of $14,714.00, medical expenses in the amount of $399.69 and "wet kit" installation in the amount of $350.00. The sum of these items, $15,463.69, when subtracted from the total judgment of $36,963.69 leaves $21,500.00. Both sides agree in their briefs to us that $1,500.00 was awarded as loss of consortium, and the defendants assert in brief that $20,000.00 was awarded as general damages.
Based on the trial court's statements at the conclusion of the evidence, the plaintiffs' prayer, and the statements in brief, we determine that $20,000.00 of the lump sum judgment was awarded for medical expenses and $1,500.00 was awarded for loss of consortium, as well as the sums previously referenced for lost profits, medical expenses and "wet kit" installation. We evaluate the appeal on that basis.
Defendants maintain on appeal that the trial court was in error in finding Mr. Creel one hundred percent negligent in the cause of the accident and in its refusal to find Mr. Johnmeyer comparatively negligent. They appeal as well the excessiveness of the general damage award and the special damages. They further contend that the court was in error in concluding that there was evidence to support an award for loss of consortium.
Mr. and Mrs. Johnmeyer do not appeal or answer, but rather contend that the judgment of the trial court is correct.

ASSESSMENT OF FAULT
The defendants urge that the trial court erred in assigning one hundred percent of the fault of the accident to Solomon Creel and thereby alloting no negligence whatsoever to Mr. Johnmeyer. It is apparent from the trial court's ruling that it adjudged Mr. Creel solely responsible for the collision and found that Mr. Johnmeyer exercised reasonable caution commensurate with the green light he enjoyed.
In this regard, the defendants contend that although the trial court may have been reasonable in finding that Mr. Creel came through the intersection on a red light, the court should have found Mr. Johnmeyer comparatively negligent in that he failed to exercise caution in maintaining a proper lookout when entering the intersection. Defendants cite Spencer v. Hynes, 452 So.2d 1291 (La.App. 3d Cir.1984), and Delise v. Metropolitan Property and Liability Insurance Company, 459 So.2d 729 (La. App. 4th Cir.1984). Although these cases do involve intersectional collisions, the first deals with failure to yield the right of way to an ambulance and the second involved a stop sign as opposed to the semaphore signal which controlled the intersection in the present case. We find these cases inapplicable on their facts.
To the contrary, we note and agree with the ruling in Johnson v. State, 450 So.2d 386 (La.App. 1st Cir.1984), writ denied 450 *574 So.2d 1311 (La.1984), which, under circumstances similar to the case at bar, found a motorist free from negligence where he was favored by a green light and observed a vehicle coming across the intersection in front of him when he was between 50 and 100 feet from the intersection. He braked but was unable to avoid the accident. The Johnson court, at pages 390-391, approved the judgment of the lower court in the following terms:
"Our jurisprudence provides that a motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right-of-way. The favored motorist is not obligated to look to his left or right before entering the intersection and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. All that is required is that the favored motorist maintain a general observation of the controlled intersection. Gaspard v. Stutes, 380 So.2d 201 (La. App. 3rd 1980).
We believe the aforesaid is a correct statement of the law appropriate to the instant circumstances. We thus determine that the trial court's assessment of fault is not manifestly erroneous and will therefore be affirmed.

GENERAL DAMAGES
Mr. Johnmeyer apparently suffered injury to the neck and shoulder area as a result of the accident. There is some question, however, as to a wedging of the L-1 vertebrae. The age of this injury was not specifically determined by the treating physicians.
Dr. Donald R. Taylor, the only physician to testify in the case, was Mr. Johnmeyer's general practitioner. He testified that he saw Mr. Johnmeyer following the accident on January 23, 1984. Mr. Johnmeyer complained of muscle soreness of his left shoulder and cervical area. Dr. Taylor diagnosed the problem as a muscle strain of the left cervical area and left shoulder. He prescribed a muscle relaxant and placed Mr. Johnmeyer on light work duty. Upon his return on January 30, 1984, Mr. Johnmeyer still had pain in the neck area which had moved to the right side also. He still complained of left shoulder pain and pain in the mid-back and low lumbar area. An x-ray and full cervical spine series showed results within normal limits indicating no evidence of bone damage. His lumbar spine, however, showed scoliosis and a wedging of the L-1 vertebra. Dr. Taylor testified that the back injury appeared old but that he could not be certain if it was old or new.
When Mr. Johnmeyer continued to have difficulties, Dr. Taylor recommended consultation with a specialist. Mr. Johnmeyer consulted Drs. Mead and Overdyke, orthopedic surgeons. Dr. Taylor testified that he saw Mr. Johnmeyer next on February 20, 1984. He had been doing exercises as per the specialists and was showing signs of improvement. He saw him again on March 5, 1984, with gradual improvement. The last time he saw Mr. Johnmeyer was on March 19, 1984, at which time he indicated Mr. Johnmeyer was experiencing no muscle spasms or pain. After consultation with Dr. Mead, the plaintiff was released to return to work on regular duty on March 22, 1984.
Although Drs. Mead and Overdyke did not testify in the case, their medical reports were admitted into evidence. The medical report dated February 2, 1984, of Dr. William Overdyke indicates that Mr. Johnmeyer "has a compression fracture of L-1, which is questionable whether it is new or old." The report also states that x-rays reveal a wedge compression fracture of L-1 which "appears quite old although there is no history of a previous compression fracture." At the time, Mr. Johnmeyer was experiencing low back pain.
Dr. Gordon Mead's report dated March 22, 1984, indicated that Mr. Johnmeyer's back "has bothered him with strenuous activity," but that Mr. Johnmeyer was eager *575 to return to work. Dr. Mead further reported that examination revealed full range of motion of his back with some pain on full flexion. No tenderness or muscle spasm was found in the lumbar area. X-rays of the lumbar spine "show anterior wedging of L-1 with what appears to be a well-healed compression fracture of L-1." The report further indicated that Mr. Johnmeyer was free to return to work as a truck driver.
Dr. Kevin Kelly, chiropractor, also testified on plaintiff's behalf. Dr. Kelly indicated that he saw Mr. Johnmeyer as a patient in September of 1984 following a subsequent unrelated automobile accident in which plaintiff was involved. Dr. Kelly further testified that x-rays revealed degeneration in the lower cervical spine as well as a slight compression fracture of the first lumbar vertebrae. He was of the opinion that Mr. Johnmeyer's x-rays showed a slight calcium deposit indicating that the injury had not been there very long. However, he further believed that the compression factor preexisted the subsequent accident for which he treated Mr. Johnmeyer.[2]
Due to a lack of assigned reasons for the general damages award of the trial court, we are unable to precisely determine whether the trial court accepted or rejected the argument that Mr. Johnmeyer's compression fracture occurred as a result of the accident in question, or whether the court determined that the injuries causally related to the accident were the other injuries reported, a muscle strain to the left cervical and left shoulder areas.
The sole import of Dr. Kelly's testimony is that the compression fracture predated the accident for which Mr. Johnmeyer consulted him. It is also clear that the treating general practitioner and consulting orthopedic surgeons found Mr. Johnmeyer basically asymptomatic two months post-accident, and that the plaintiff was at that time released to return to work without restrictions. Moreover, there is no assigned degree of disability indicated in the record.
Dr. Taylor testified that he could not determine whether the compression fracture was new or old. He further found degenerative changes indicating an old injury. These factors, coupled with the positive assessment of the specialist, Dr. Overdyke, in his report of February 2, 1984, of a compression fracture that "appears quite old," clearly preponderate that the compression fracture was not suffered from the accident at issue.[3] Thus, if the trial court did determine to the contrary, we view that finding as clearly wrong.
We therefore evaluate the award of $20,000.00 for general damages as an award for muscle strain to the left cervical and shoulder areas of some two months' duration with no residual effects. An award of $20,000.00 for these injuries is clearly excessive. We are therefore required to lower this excessive award to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 330 So.2d 649 (La.App. 3d Cir.1976), reversed as to quantum, 341 So.2d 332 (La.1976). After a review of all the circumstances, we determine that an award of $10,000.00 is the absolute highest which we can sustain on these injuries. We therefore amend the award of the trial court to reduce the general damages from $20,000.00 to $10,000.00.

SPECIAL DAMAGES
The trial court awarded the entire amount requested ($399.89) to Mr. Johnmeyer for his medical expenses, which defendants contest. This is a minimal sum for the injuries suffered and the treatment *576 endured by this plaintiff. It is clearly supported by the record.
Defendants also challenge the amount awarded to Mr. Johnmeyer as lost profits. The trial court awarded the total amount requested as lost profits. This sum, $14,714.00, represented a number of lost job opportunities during the time Mr. Johnmeyer was unable to work. The plaintiff testified specifically with respect to the lost profits from each job he contended he lost. In addition, there was testimony from a representative of each of the parties whom Mr. Johnmeyer alleged would have hired him during the period he was disabled. In each case, that testimony corroborated the testimony of the plaintiff. There being no evidence to the contrary, we determine that the trial court was not in error in its award in this regard.
Defendant also challenges the trial court award of $350.00 for installation of a "wet kit" on Mr. Johnmeyer's truck during his period of disability. A "wet kit" is apparently a hydraulic apparatus which allows the tail gate of a truck to be raised and lowered automatically. The only evidence with respect to this item is Mr. Johnmeyer's testimony that he was going to install this kit on his truck but was unable to do so because he was disabled. He therefore paid $350.00 to another party to accomplish this task. There is no evidence in the record to indicate the necessity of this work during Mr. Johnmeyer's period of disability. We thus determine that the allowance of this item is error and we reverse in that regard. It will be necessary that the judgment be reduced in this amount.
The last item of special damages challenged by the defendants is an award of $1,500.00 for loss of consortium. Defendants argue that the evidence presented was insufficient to support this award. We agree.
Mrs. Johnmeyer testified that as a result of Mr. Johnmeyer's accident, her relationship with her husband from January through March of 1984 was very stressful. She indicated that he was cross, worried and hurt. She described her general condition as worried. She also stated that the accident was financially stressful on the family. She said that her husband tossed and turned in bed because his back hurt. This is the extent of the evidence presented.
It is well established in our jurisprudence that one person may not recover damages for mental pain and anguish suffered by him merely as a result of physical injuries sustained by another person. McFarland v. Cathy, 349 So.2d 486 (La. App. 3d Cir.1977); Lanham v. Woodward, Wight and Company, Ltd., 386 So.2d 131 (La.App. 3d Cir.1980), writ denied, 392 So.2d 668 (La.1980).
However, an award for loss of consortium is properly made where there has been some measurable or compensable loss. LSA-C.C. Art. 2315B. This court in Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985), broke down the concept of consortium into seven component parts. These are loss of: love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, and lastly, felicity. Mrs. Johnmeyer's testimony fails to support a claim under any of the above component aspects of lost consortium.
We further note the reasoning of Sharp v. Metropolitan Property and Liability Insurance Company, 478 So.2d 724 (La.App. 3d Cir.1985), which recognized a need to distinguish "between loss of consortium, service and society, and the mental anguish suffered by an uninjured third party." The latter is not compensable. The concept contemplates a proof of damages of something more than a loss of general overall happiness. Finley v. Bass, supra. We therefore determine that the evidence is insufficient to support recovery for loss of consortium. We reverse the award in that regard.
For the reasons stated herein, it will therefore be necessary to amend the trial *577 court judgment to provide for a reduction in quantum and to reduce the judgment by the amounts awarded for loss of consortium and for the "wet kit" installation. We affirm the judgment of the trial court in all other respects. As a result of the foregoing, the judgment of the trial court is hereby amended, reversed, and changed to show an award to plaintiff in the full sum of $25,113.69. Costs of this appeal are to be borne equally by plaintiffs and defendants.
REVERSED IN PART, AMENDED IN PART and AFFIRMED AS AMENDED.
NOTES
[1] Such is the situation as we will hereinafter demonstrate even though such damages are clearly separate property. Flowers v. United States Fidelity & Guaranty Company, 381 So.2d 378 (La.1980); LSA-C.C. 2315 B.
[2] Dr. Kelly saw Mr. Johnmeyer approximately twenty-five times treating his upper and lower back with approximately the same concentration, as a result of Mr. Johnmeyer's complaints during that period.
[3] Dr. Overdyke did note a lack of a history of a previous injury, as we previously observed.