GULOTTA, Judge.
These consolidated suits arose out of an automobile accident that occurred on October 10, 1978, when Mrs. Mary LoBrono drove her automobile in reverse gear with the motor racing at a high speed. Mrs. LoBrono had driven her daughter and her daughter’s friend to a home in a residential area in Harvey, Louisiana, turned off the engine, and parked the automobile momentarily while talking with her daughter who had gotten out of the vehicle. While the two young girls were in close proximity to her car, she started the engine and put the car in reverse, whereupon the racing engine caused the automobile to spin out of control in reverse, striking the daughter and backing at high speed into the home of Arthur Leonard, a plaintiff in one of these consolidated suits.
In the first-filed suit, based on a claim of defect in an automobile, Lawrence LoBrono seeks recovery against Gene Ducote Volkswagen and Volkswagen of America, for his daughter’s personal injury and his automobile damage. Gene Ducote Volkswagen and Volkswagen of America, in separate third-party demands against Mrs. Mary LoBrono, seek indemnity and/or contribution based on the claim that the accident was caused solely from Mrs. LoBrono’s negligence. Plaintiffs’ insurer filed an intervention against Ducote and Volkswagen of America, seeking recovery for the amount paid in property damage for the repairs of plaintiff’s automobile.
In the second-filed suit, the owner of the home damaged in the accident, and his insurer seek recovery against LoBrono, his liability insurer, Gene Ducote Volkswagen and Volkswagen of America. These suits were subsequently consolidated. Thereafter, LoBrono’s claims against Ducote and Volkswagen of America were compromised. The matter then went to trial on the claim of Arthur Leonard and his insurer, State Farm Fire and Casualty Company, for their claim against Cumis Insurance Society, Inc., LoBrono’s liability insurer, Ducote and Volkswagen of America.
The trial judge, in written reasons, concluded that there existed “two proximate causes” of the accident, i. e., the negligence of Mary LoBrono and the existence of a defective accelerator cable. Judgment was rendered in favor of Arthur Leonard and his insurer against LoBrono’s insurer, and Volkswagen of America, in solido. Ducote was exonerated from liability and all other third-party claims, interventions and recon-ventional demands were dismissed. Cumis and Volkswagen of America appeal.
LIABILITY OF VOLKSWAGEN OF AMERICA
The basis of the claims against Volkswagen of America is the allegedly faulty or defective design of the accelerator cable that resulted in the “sticking” of the inner-metal strip of the accelerator cable when the pedal is depressed, causing the uncontrolled racing of the automobile engine. In product liability cases, the rule is well established that a manufacturer of a product that involves a risk of injury to the user is liable if an injury is caused without fault of the user by the defect of the product. See Weber v. Fidelity & Casualty Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971); Walter v. Valley, 363 So.2d 1266 (La.App. 4th Cir. 1978); Leaber v. Jolley Elevator Corp., 354 So.2d 746 (La.App. 4th Cir. 1978), writs refused 356 So.2d 1004, 1010. A defective product has been defined in those cases as one that is “unreasonably dangerous to normal use.” See Weber v. Fidelity & Casualty Co. of N. Y., supra. The test then is whether the evidence established that the dangerous racing of the automobile engine was caused by a faulty or defective design of the accelerator cable or accelerator housing when the automobile was in normal use.
*1362 Dana LoBrono, the injured daughter of the driver of the automobile, stated that she had driven the automobile prior to the accident, had ridden in it with her parents, and had never had any problem with the accelerator sticking or causing trouble. Although plaintiff Lawrence LoBrono stated that he had made complaints to Gene Du-cote Volkswagen about the gas pedal or linkage sticking, he stated when he had driven the automobile away from the accident scene on the night of the accident, he had no trouble with the accelerator cable sticking. He indicated also that the brakes were operating normally and he had encountered no trouble with the gear shift. Docute’s repair orders prior to the accident indicated that LoBrono had made complaints regarding the idle adjustment because the automobile “dies”; no complaints were indicated on the repair order that the automobile was accelerating.
Mary LoBrono, the automobile driver, testified that upon bringing the automobile to Ducote on September 15, 1978, approximately three weeks prior to the accident, she complained about the accelerator. Although her testimony was somewhat confusing, she stated that prior to the accident neither she nor her daughter had experienced any problem with the sticking of the accelerator. Although her husband had mentioned to her that the automobile would “rev up” when he started the car and had suggested that she tap the accelerator, she indicated that he had said nothing about the accelerator sticking.
Fred Liebkmann, a consulting mechanical engineering expert on whom the trial judge “relied heavily”, testified that his examination of the automobile after the accident did not reveal any “hangup” when he pressed the accelerator pedal. He stated also that he had noticed no hangup while looking under the hood as LoBrono was pressing the accelerator pedal. However, his examination of the accelerator cable inside the engine revealed sticking of the accelerator when the cable was manually depressed (inside the engine) approximately one inch. According to Liebkmann, because of a defective design the accelerator cable bends under a vacuum hose inside the engine at an almost ninety degree angle and pressing the cable downward causes a “kink” in the cable resulting in the sticking of the accelerator. Liebkmann explained that this defect in design resulted in a tendency of the engine to race.
Richard Berger, Gene Dueote's service manager, stated that on October 26, 1978, at Mrs. LoBrono’s request, he inspected the automobile for accelerator sticking. He found no sticking, accelerator cable or fuel line problem. Disconnecting and bending of the accelerator cable by Berger did not result in any sticking of the accelerator rod or cable. According to this witness, the cable is designed to be flexible. He explained that the purpose of using plastic strapping, after the accident, to bind the accelerator cable to another piece of tubing in the engine compartment was only to prevent the cable from rubbing against the vacuum line. He stated that use of this plastic strapping had no other significance, and was not in any way related to complaints of accelerator sticking, or used to prevent any such sticking.
As pointed out hereinabove, in a product liability case it is plaintiff’s burden to establish a defect that is unreasonably dangerous to normal use. The uncontra-dicted lay and expert testimony is that acceleration testing under normal use did not result in accelerator sticking.
Although Liebkmann testified that the defect in design of the accelerator cable allowed accelerator sticking, his conclusion was not supported by testing under normal use. The depression of the cable inside the engine approximately I-IV2 inch with his fingers was testing conducted under abnormal conditions. Thus, it was only testing under abnormal use that resulted in sticking. Under these circumstances, we cannot conclude that plaintiff carried the required burden of establishing liability of the manufacturer or, in this case, of the manufactur *1363 er’s distributor, V.O.A.[1] Having so concluded, we hold no entitlement to recovery exists against Volkswagen of America, Inc.
We do not base our findings on a manifest error of fact but on an insufficiency of evidence, an error of law.
LIABILITY OF GENE DUCOTE VOLKSWAGEN, INC.
Because of our findings, no necessity exists to consider the question of entitlement to recovery against Gene Ducote Volkswagen, Inc.
LIABILITY OF MARY A. LO BRONO
Although the trial judge found that Mrs. LoBrono was negligent, and this negligence was a “proximate cause” of damages, he failed to state a factual basis for this finding.
Mrs. LoBrono’s testimony, although not clear, when taken as a whole, indicates that in accordance with her husband’s suggestion she tapped the accelerator before starting the engine. After it had started, she again tapped the accelerator because it was racing slightly and then placed the car in reverse; however, the racing and revving increased appreciably. She stated that she could not take the car out of reverse gear, that pressing on the brakes had failed to stop the movement of the car and that it had spun uncontrolled into the Leonard house.
The uncontradicted testimony is that examination of the automobile subsequent to the accident indicated no transmission, brake or accelerator problems. Although not articulating with specificity those facts upon which he relied for his finding of negligent operation of the automobile by Mrs. LoBrono, the possibility exists that the trial judge’s conclusion was based either on LoBrono’s negligent or inadvertent stepping on the accelerator when she attempted to apply the brakes after the car was placed in reverse, or on her failure to neutralize the car when confronted with a sudden emergency. Whether liability is sought to be attached to Mrs. LoBrono by virtue of LSA-C.C. art. 2317[2] for damage occasioned by those things under one’s control or by an evidentiary presumption of negligence under a res ipsa loquitur theory from which she failed to exculpate herself, the fact remains that the automobile, absent proof of a defect, sped uncontrolled in reverse while being driven by her. Under these circumstances we cannot conclude the trial judge manifestly erred in his factual conclusion that the damage resulted from the negligent operation of the vehicle by Mrs. LoBrono.
DECREE
Having so concluded, we reverse and set aside the judgment of the trial court. Judgment is now rendered dismissing Arthur L. Leonard and State Farm Fire and Casualty Company, Inc.’s suit against Volkswagen of America, Inc. and Gene Du-cote Volkswagen, Inc. Judgment is further rendered dismissing Cumis Insurance Society, Inc.’s intervention against Volkswagen of America and Gene Ducote Volkswagen, Inc. Judgment is further rendered in favor of State Farm Fire and Casualty Company and against Cumis Insurance Society, Inc. in the sum of $4,997.77, with legal interest from date of judicial demand until paid. Judgment is further rendered in favor of Arthur L. Leonard and against Cumis Insurance Society, Inc. in the sum of $100.000, with legal interest from date of judicial demand until paid. Costs to be paid by Cumis Insurance Society, Inc.
REVERSED, SET ASIDE, AND RENDERED.

. Because of our conclusion no necessity exists to consider V.O.A.’s claim that plaintiff failed to establish that V.O.A. was a distributor for the manufacturer and would stand in the shoes of the manufacturer in accordance with Media Pro. Consult., Inc. v. Mercedes-Benz of N. A., Inc., 262 La. 80, 262 So.2d 377 (1972).

. LSA-C.C. art. 2317 reads as follows:
“Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.”