403 So.2d 723 (1981)
Lawrence LoBRONO, et al.
v.
GENE DUCOTE VOLKSWAGEN, INC., et al.
No. 81-C-0412.
Supreme Court of Louisiana.
September 8, 1981.
Dan R. Dorsey, River Ridge, for plaintiffs-applicants.
*724 Adrianne L. Baumgartner and D. J. Mitchell of Porteous, Toledano, Hainkel & Johnson, Robert E. Winn and J. David Forsyth of Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, Jacob J. Amato, Jr., of Amato & Creely, Gretna, Michael D. Zelden, New Orleans, for defendants-respondents.
MARCUS, Justice.[*]
These consolidated suits arose out of an automobile accident that occurred on October 10, 1978, when Mrs. Mary A. LoBrono drove her 1977 Volkswagen Dasher stationwagon, owned by her husband, Lawrence LoBrono, into the residence of Mr. and Mrs. Arthur L. Leonard. Prior to the collision, the automobile struck Dana LoBrono, the minor daughter of the LoBronos.
In the first-filed suit, Lawrence LoBrono sought recovery for the personal injuries to his minor daughter[1] and for the property damage to his automobile. Made defendants were Gene Ducote Volkswagen, Inc., seller of the vehicle, and Volkswagen of America, Inc., manufacturer of the vehicle. It was alleged that the accident was caused by a defect in the accelerator linkage system and/or brakes of the automobile and/or the failure to properly repair the vehicle. Ducote and Volkswagen separately answered generally denying the allegations of the petition and third-partied Mary A. LoBrono seeking indemnification and/or contribution based on a claim that the accident was caused by the negligent operation of the vehicle by Mrs. LoBrono. Cumis Insurance Society, Inc., plaintiff's insurer, intervened against Ducote and Volkswagen seeking recovery of its subrogated interest in the cost of repairing the LoBrono vehicle.
In the other suit, Arthur L. Leonard, owner of the residence struck by the LoBrono automobile, and his insurer, State Farm Fire and Casualty Company, sought recovery for damage to the Leonard home caused by the accident. Made defendants were Mr. and Mrs. LoBrono and their insurer, Cumis, and Ducote and Volkswagen. It was alleged that the accident was caused by the negligence of Mr. and Mrs. LoBrono and/or a defect in the accelerator linkage system and/or brakes of the automobile and/or the failure to properly repair the vehicle. Volkswagen and Ducote separately answered generally denying the allegations in the petition and further asserted a third party demand against Mary A. LoBrono based on the same grounds as set forth in their third party petition in the first suit. The LoBronos and their insurer, Cumis, also answered generally denying the allegations of the petition and further answered by alleging that the accident was caused by Ducote and Volkswagen on the same grounds as set forth in Mr. LoBrono's petition in the original suit.
The two suits were consolidated for trial. Prior to trial, the LoBrono claims against Ducote and Volkswagen, including all incidental demands, were settled. The matter then went to trial on the intervention by Cumis against Ducote and Volkswagen in the first suit and on the claims of Mr. Leonard and State Farm against Mr. and Mrs. LoBrono and their insurer, Cumis, and Ducote and Volkswagen as well as on all third party demands in the second suit.
The trial judge, finding that the accident was caused by the "negligence" of both Mary A. LoBrono and Volkswagen rendered judgment in favor of State Farm and Mr. Leonard in the sums of $4,997.77 and $100 respectively, plus legal interest and costs, and against Cumis and Volkswagen in solido. No liability was found on the part of Ducote. All other claims were dismissed.
Cumis and Volkswagen appealed. The court of appeal found that the trial judge erred in his finding that the plaintiffs and intervenor had carried their burden of establishing that the accelerator stuck under normal use. However, the court concluded that under the circumstances of the case *725 the trial judge did not manifestly err in his factual conclusion that the damage resulted from the negligent operation of the vehicle by Mrs. LoBrono. Hence, the court of appeal reversed the judgment of the trial court insofar as it held Volkswagen liable; otherwise, it affirmed.[2] Upon application of Cumis, we granted certiorari to review the correctness of that decision.[3]
The accident occurred when Mrs. LoBrono was driving her daughter and her daughter's friend to a sorority meeting at the Matlick residence. Upon reaching their destination, Mrs. LoBrono parked the car with the passenger side to the curb in front of the Matlick residence and turned off the ignition. The girls exited from the car and Miss LoBrono proceeded to the driver's window to give her mother directions to return home. She instructed her mother to go forward to the end of the block, turn around, and then come back down the same street. Mrs. LoBrono testified that when she turned the ignition key and attempted to put the car in drive, it locked in reverse and began racing up to 45 or 50 miles per hour. She then tapped the accelerator because her husband had told her to do that if the automobile revved up. However, her testimony is unclear as to whether she tapped the accelerator while the car was still in park or was already in reverse. She stated that both the accelerator and brake pedal were to the floor of the car. She explained, "Really, it was like a dream, but it [the car] spun, spun around ...." According to Mrs. LoBrono, the car went backward, hitting her daughter and knocking her daughter's friend down before it ran between two trees on the Leonard's front yard located directly across the street from where the car was originally stopped and collided with the front brick wall of the Leonard residence. Mrs. LoBrono further stated that neither she nor her husband or daughter had previously experienced any problem with the accelerator sticking. Dana LoBrono also stated that she had driven the car prior to the accident and had never encountered a problem with the accelerator.
The Leonards, who were at their next door neighbor's house when the accident occurred, went to investigate and stated in their depositions introduced at trial that they found the rear of the Volkswagen protruding through the brick wall into their kitchen. Mr. Leonard stated that he as well as a fireman and a policeman who came to investigate the accident tried the brakes of the car and they seemed fine. He further stated, without objection, that when Mr. LoBrono arrived at the scene and got into the car a neighbor heard him say that "there wasn't a damn thing wrong with the car." Mrs. Leonard stated that when she later asked Mrs. LoBrono what happened she told her that her brakes had failed, causing her to spin and end up colliding with the house.
Mr. LoBrono testified that when he drove the automobile away from the accident scene that evening he had no trouble with the accelerator sticking or with the brakes. Although he stated that he complained to Ducote prior to the accident about the car "racing when he started it," no complaints were indicated on the repair orders and the service manager testified that Mr. LoBrono had never told him that the automobile was improperly accelerating or that the accelerator was sticking. The car was approximately one year old and had been driven about 11,000 miles at the time of the accident.
Fred Liebkemann, a mechanical engineer, was called to testify by Cumis. He stated that he examined the car two days after the accident at the LoBrono home. He particularly examined the accelerator linkage for evidence of what may have caused the accident. He explained how the accelerator linkage worked:
[I]n the car, there is an accelerator pedal, the normal type that is found in most cars, you've got an accelerator cable that goes through the fire-wall into the engine compartment and over to an arm that *726 operates off the fuel rack, so as to move it, and because the engine could speed up and slow down, the cable consists of a hollow outer tube with a brass plated bushing on each end, and inside that cable runs a metal, a steel strip about a quarter inch wide, about thirty or forty thousandths inch thick that moves back and forth inside the cable. When the operator pushes the accelerator down, it moves the arm to cause the engine to increase RPM's. When the operator's foot is removed from the accelerator, there is a spring return that brings it back to idle speed.
Upon examining the system, he found that where the accelerator cable containing the metal strip comes out of the bushing, there was a tendency for the strip to "bind up or kink." However, he admitted that several times when he started the engine, revved it up and took his foot off the accelerator, the accelerator never stuck on its own. Moreover, no hangup occurred when the same test was performed by Mr. LoBrono. When Mr. Liebkemann manually depressed the accelerator cable about a foot away from the bushing down to a position about an inch further than where it was normally situated, the cable did kink, causing excessive friction so that the spring return was insufficient to bring the system back to idle. He concluded by stating that the tendency of the accelerator linkage to hang up or kink could possibly explain what Mrs. LoBrono had reported as taking place. The tests were performed while the car was parked in the LoBrono driveway and covered a period of thirty minutes to an hour. Mr. Liebkemann also tested the brakes and found no problem with them.
Richard Berger, Ducote's service manager, stated that October 26, 1978, about two weeks after the accident, was the first time that, upon request of the LoBronos, he inspected the automobile for evidence of the accelerator sticking. He stated that on the occasions that the car was brought in for service prior to the accident, there had been no complaints about the accelerator but that new brake pads had been placed on the car at the request of Mr. LoBrono. Ducote's service department found no excessive bind of the accelerator cable and found no evidence of sticking. After driving the car three or four times, Mr. Berger as well as Volkswagen's field representative, Wolfgang Guder, could find no defect or problem in the accelerator cable. Mr. Berger explained that the cable was designed to be flexible and even if bent would operate properly. The only way to cause improper operation would be to bend the cable to a full forty-five degree angle.
The sole issue presented for our determination is whether the accident was caused by a defect in the accelerator linkage system of the automobile or by the negligence of Mrs. LoBrono or by the fault of both. Resolution of this issue will determine the rights and liabilities of the parties involved in this litigation.[4]
In products liability cases, the rule is well established that a manufacturer of a product that involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. The plaintiff claiming injury has the burden of proving that the product was defective, that is, unreasonably dangerous to normal use, and that the plaintiff's injuries *727 were caused by reason of the defect. Weber v. Fidelity and Casualty Insurance Co. of New York, 259 La. 599, 250 So.2d 754 (La. 1971).
We conclude that the evidence does not establish that the accident was caused by a defective accelerator linkage system in the Volkswagen Dasher stationwagon owned by Mr. LoBrono.[5] Mr. Liebkemann testified that several times when he started the engine, revved it up, and took his foot off the accelerator, the accelerator never hung up or kinked. Only when he manually depressed the accelerator cable was an angle created in the cable that was so severe as to cause a kink so that the spring return was insufficient to bring the system back to idle. At most, he could only conclude that because of its design, there was a tendency for the cable to hang up or kink. The LoBronos had owned the vehicle for almost a year and had driven it some 11,000 miles yet Mr. LoBrono, Mrs. LoBrono and Dana LoBrono all testified that the accelerator had never stuck previously. The service records of Ducote as well as the testimony of Ducote's service manager indicated that the LoBronos had never registered any complaints regarding this alleged defect prior to the accident. Mr. LoBrono further testified that he had driven the vehicle home that evening and had no trouble with the accelerator sticking. Examination of the vehicle by Ducote's service manager and Volkswagen's field representative revealed no evidence of accelerator sticking or problems in the accelerator cable. In sum, we conclude, as did the court of appeal, that the plaintiffs and intervenor failed to carry their burden of proving that the accident was caused by an accelerator linkage cable that was defective, that is, unreasonably dangerous to normal use. Therefore, Volkswagen is not liable. The trial judge was clearly wrong in finding otherwise.
Having found that the vehicle was not defective, we must conclude that the accident was caused by the negligent operation of the vehicle by Mrs. LoBrono. Mrs. LoBrono's testimony, although not clear, when taken as a whole suggests that in accordance with her husband's advice, she tapped the accelerator after she started the engine and placed the car in reverse. She stated that she could not take the car out of reverse and that pressing on the brakes did not stop the movement of the car. Consequently, the car spun uncontrolled into the Leonard Home. Although plaintiff and intervenor argue that the accelerator cable was defective, Mrs. Leonard stated that Mrs. LoBrono told her that the brakes had failed and caused the car to spin resulting in the accident. Mrs. LoBrono further stated that the entire event was really "like a dream," illustrating her inability to explain what occurred and why. Under the circumstances, we have no difficulty in concluding that Mrs. LoBrono's negligence in inadvertently stepping on the accelerator when she attempted to apply the brakes after the car was placed in reverse and in her failing to neutralize the vehicle once it began to proceed in a backward direction was the sole cause of the accident and resulting damages. Hence, the court of appeal was correct in concluding that the trial judge did not manifestly err in his factual conclusion that the damages resulted from the negligent operation of the vehicle by Mrs. LoBrono.
Having concluded that the accident was caused solely by the negligence of Mrs. LoBrono, we affirm the judgment of the court of appeal in favor of State Farm and Mr. Leonard against Cumis in the sums of $4,997.77 and $100 respectively, plus legal interest and costs, and dismissing all other claims.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
NOTES
[*] Judge Frederick Stephen Ellis of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Ad Hoc in place of Associate Justice Watson, recused.
[1] Upon reaching the age of eighteen, Dana LoBrono's motion to be substituted as party plaintiff in place of her father as the administrator of her estate was granted.
[2] 391 So.2d 1360 (La.App. 4th Cir. 1980).
[3] 397 So.2d 1364 (La.1981).
[4] Cumis intervened against Ducote in the first suit for its subrogated interest in the cost of repairing the LoBrono vehicle. Mr. Leonard and State Farm made Ducote a party defendant in the second suit for recovery of the property damage to the Leonard house. The trial court found no liability on the part of Ducote. Mr. Leonard and State Farm did not appeal nor answer the appeal. Hence, the dismissal of their claim against Ducote is final. Cumis appealed. The court of appeal affirmed the dismissal of Cumis' intervention against Ducote. While we granted Cumis' application for a writ of review, Cumis neither assigned as error, briefed nor argued the liability of Ducote. Hence, we consider its claim against Ducote to have been abandoned. In any event, the record does not support a finding of any liability on the part of Ducote.
[5] Volkswagen argues that no party met the burden of establishing its status as manufacturer of the automobile or any other connection between Volkswagen and the subject vehicle. Since we conclude that the automobile was not defective and therefore Volkswagen is not liable, we will pretermit this issue.