550 So.2d 818 (1989)
Ollie FOSTER
v.
CRAIG EQUIPMENT COMPANY, et al. Abe BUSADA, et al.
v.
CADDO PARISH SCHOOL BOARD, et al.
Nos. 20808-CA, 20810-CA and 20811-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
*820 J. Peyton Moore, Shreveport, for Ollie Foster.
Rountree, Cox & Guin by Gordon E. Rountree, Dale G. Cox, Shreveport, for Caddo Parish School Board & United Pacific Insurance Company
Jack H. Kaplan, Sheveport, for Abe Busada.
Mayer, Smith & Roberts by George T. Allen, Jr., Shreveport, for Craig Equipment Co., Inc.
Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Brian D. Smith, Shreveport, for Navistar Intern. Transp. Co., formerly Intern. Harvester Co.
Blanchard, Walker, O'Quin & Roberts by Julie LaFargue, Shreveport, for U.S. Fidelity Guar. Co.
Cook, Yancey, King & Galloway by Charles Gordon Tutt, Shreveport, for American Transp. Corp.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Chief Judge.
On April 28, 1983, a school bus owned by the Caddo Parish School Board and driven by Ollie Foster crashed into a building owned by Abe Busada. This accident gave rise to four lawsuits. The Caddo Parish School Board (School Board) and its insurer, United Pacific Insurance Company (United Pacific), brought an action in redhibition and products liability against Craig Equipment Company (Craig), seller of the bus, and its insurer, United States Fidelity and Guaranty[1], and International Harvester Corporation, subsequently known as Navistar International Transportation Corporation (Navistar)[2], the manufacturer of the bus chassis. The school board later added American Transportation Corporation (American), manufacturer and installer of the bus body, as a defendant. Craig filed cross claims against Navistar and American seeking indemnity or contribution and attorney's fees pursuant to LSA-C.C. Art. 2531. In a separate suit, Ollie Foster, the bus driver, sought damages for personal injuries sustained in the accident against the same defendants under a theory of products liability. Abe Busada and Bruce Busada[3] filed suit seeking recovery for damages sustained to their building from those defendants involved in the manufacture and sale of the bus, as well as the school board and Ollie Foster. Finally, Gary Ebarb, on behalf of his minor daughter, Belinda Ebarb, a passenger on the bus, sued to recover damages for injuries she received in the accident.
The four suits were consolidated for trial. After trial, the trial court ruled that the accident was caused by a manufacturing defect in the bus's accelerator, which caused the accelerator to hang up or stick in a full throttle position. It ruled that Navistar and Craig were liable for redhibition *821 damages in solido to the school board. Further, it ruled that Navistar was liable for damages sustained by Ollie Foster, Abe Busada and Belinda Ebarb. Craig's claim pursuant to LSA-C.C. Art. 2531 was recognized against Navistar. Judgment was rendered in pertinent part as follows:
1. in favor of Caddo Parish School Board and against Craig Equipment Company and Navistar International Transportation Corporation, for $33,101.16, the price of the bus, minus $750 for the school board's use of the bus plus $20,000 in attorney's fees;
2. in favor of United Pacific Insurance Company and against Navistar for $44,103.66, representing sums paid to children injured in the accident and Abe Busada;
3. in favor of Ollie Foster and against Navistar for $11,374.69 for damages sustained in the accident, with the school board to receive $855.21 paid by it to Ms. Foster for medical bills;
4. in favor of American Transportation Corporation rejecting all demands against it;
5. in favor of Gary Ebarb and against Navistar;
6. in favor of Abe Busada and against Navistar for $8,000;
7. in favor of Craig and against Navistar for $33,101.16 less $750, plus attorney's fees of $7,500;
8. rejecting Craig's demands against all other parties and rejecting Navistar's cross claims against all other parties.
Navistar appealed suspensively with ten assignments of error. The school board, United Pacific Insurance Company and Ollie Foster answered Navistar's appeal and appealed devolutively. Abe Busada, American Transportation and Craig Equipment answered. Gary Ebarb's appeal on behalf of his daughter was not timely and is not before this court. We amend the judgment to increase attorney's fees for work done on appeal and, as amended, affirm.

Issues
The issues presented on appeal are as follows:
1. Whether the trial judge was erroneous in his conclusion that the plaintiffs proved their cases in redhibition and products liability.
a. Was the trial judge's factual conclusion that the bus had a defective accelerator erroneous?
b. Was there sufficient proof that the defect existed at the time of manufacture?
c. Was the defective accelerator the cause of the accident?
2. Whether any comparative negligence should be attributed to Ollie Foster or the school board.
3. Whether any fault should be attributed to the defendants, American Transportation Corporation and Craig Equipment Company.
4. Whether the trial judge was erroneous in his award of damages to Ollie Foster and Abe Busada.

Facts
On April 28, 1983, Ollie Foster arrived at Hillsdale Elementary School at approximately 2:45 p.m. to pick up her load of children for the ride home. Approximately 50 children were aboard the bus as she departed from Hillsdale. She was followed from the loading zone by André Lewis, another bus driver. As she exited the loading zone, she stopped at a stop sign before turning onto Hutchinson Street. Proceeding on Hutchinson Street toward Greenwood Road, Ms. Foster encountered a steep incline before coming to a stop sign at the corner of Hutchinson Street and Greenwood Road. Ms. Foster testified that as she approached the stop sign, she took her foot from the accelerator and placed it on the brake. This testimony was corroborated by two witnesses, Carla Boston and André Lewis. Carla Boston was a passenger on Ms. Foster's bus. She was seated in the front seat of the bus to Ms. Foster's right. She stated that she had a clear view of Ms. Foster's feet and the pedals of the bus. She stated that she saw Ms. Foster's right foot on the brake as they approached Greenwood Road. She was able to identify *822 the brake pedal in a photograph presented to her at trial. Further, André Lewis, the driver behind Ms. Foster, testified by way of deposition that he saw Ms. Foster's brake lights come on and stay on as she crossed Greenwood Road.
Ms. Foster stated that despite her efforts to brake, the bus kept going. The bus did not slow after the initial brake application until it was finally halted by the collision with the building. Carla Boston also testified that the bus seemed to get faster before hitting the building.
When the bus did not stop at the stop sign at Greenwood Road, Ms. Foster consciously decided to steer the bus across Greenwood Road into the Greenwood Plaza shopping center parking lot instead of turning right on Greenwood Road as planned. She stated that she did this because of traffic congestion on Greenwood Road. Ms. Foster stated that she never gave up on bringing the bus to a safe halt. She steered the bus around parked vehicles in the parking lot before finally colliding with the building. During the course of this inadvertent trip, she states that both she and the children were screaming in fear. Finally, she drove the bus into what was then known as the Old South Kitchen. Most of the children escaped the incident without injury. Ms. Foster seems to have received the most serious personal injuries from the collision.
Several witnesses who examined the bus after the accident testified at trial. All of them gave generally consistent testimony concerning the examination of the bus. Everyone seemed to agree that the accelerator pedal in the bus could be made to slide past the right side of the accelerator stop. That this event was occurring before the examination was evidenced by the fact that a small hole had been cut in a rubber mat which had been installed over the accelerator stop by American Transportation. The same problem was noted in other busses that had been purchased at the same time as Ms. Foster's bus. Although most of the witnesses noted that the pedal could only be made to slide past the stop when the pedal was depressed with hard right lateral pressure, the trial judge correctly noted that this pressure must have been applied by some of the bus drivers before these tests, as many of the busses had the hole in the mat on the right of the stop. This hole indicated that the pedal was indeed sliding past the stop and cutting the mat. No one was able to get the pedal to stick or hang up despite the fact that it could be made to go past the accelerator stop. The pedal was not designed to slide past the stop and the rubber mat should not have been placed over the accelerator stop.
The bus was purchased by the school board from Craig on April 4, 1983. The accident occured on April 28, 1983. Ms. Foster testified that she had only driven the bus for 14 school days. The bus had only 1,180 miles on it at the time of the accident. In essence, the bus was new.

Products Liability and Redhibition
To recover under a theory of redhibition the school board had to show:
1. a defect in the thing sold;
2. that the defect existed before the time of sale; and
3. that the defect was such that the purchaser would not have bought the thing had the purchaser known of the defect.
LSA-C.C. Art. 2520, Rey v. Cuccia, 298 So.2d 840 (La.1974).
Liability is established in a products liability case when the plaintiff shows:
1. that the injury or damage resulted from the condition of the product;
2. that the condition made it unreasonably dangerous to normal use; and
3. that the condition existed at the time it left the manufacturer's control.
Bell v. Jet Wheelblast, 462 So.2d 166 (La. 1985); Halphen v. Johns-Manville Sales Corporation, 484 So.2d 110 (La.1986); Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971).
In assignments of error nos. 1 & 3, appellant Navistar contends that no defective condition was shown and that the defective condition was not shown to exist before the *823 sale or when it left Navistar's control. We find these assignments of error to be without merit.
There is ample evidence in the record to establish that the accelerator pedal was moving past the accelerator stop. Witnesses from Navistar admitted that the accelerator was not designed to move past the accelerator stop. Indeed, the accelerator stop was in place to prevent the movement of the accelerator beyond the position of the accelerator stop. Therefore, the trial judge was reasonable in his conclusion that the accelerator was misaligned and was defective.
A plaintiff may prove the existence of a defect at the time of sale or when it left the manufacturer's control not only by direct evidence, but by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of sale. Rey v. Cuccia, supra; Joseph v. Bohn Ford, Inc., 483 So.2d 934 (La.1986). A prima facie case of a defect and that it existed when it left the manufacturer's control is made in the absence of abnormal use or reasonable secondary causes when the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. Joseph v. Bohn Ford, Inc., supra. Direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows the fact or causation sought to be proved is more probable than not. Rey v. Cuccia, supra. If the alleged defect appears soon after the thing is put into use, a reasonable inference may arise in the absence of other explanation or intervening cause shown, that the defect existed at the time of sale. Rey v. Cuccia, supra.
In this case, there is ample circumstantial evidence for the plaintiffs to carry their burden. The bus only had 1,180 miles on it at the time of the accident. The hole in the mat which evidenced that the accelerator was going past the accelerator stop was visible upon inspection after the accident. The school board was able to show that no one had tampered with the bus before Navistar's inspection after the accident. Other busses sold by Navistar to the school board at the same time as the sale of this bus had this same problem. There was sufficient evidence for the trial judge to conclude that the defective condition existed and that it existed when the bus left Navistar.
There seems to be two possible explanations for this accident:
1. That the accelerator hung in the open throttle position, or
2. Ms. Foster inadvertently pressed the accelerator instead of the brake.
The trial judge rejected the second possibility. The circumstantial evidence need not negate all other possible causes. Rey v. Cuccia, supra; Joseph v. Bohn Ford, Inc., supra. Here it appears that the judge ruled out driver error, leaving only the defective condition of the bus as a cause of the accident.
The trial judge found as a matter of fact that the bus's accelerator was misaligned with the accelerator stop. He found that this defect caused the accelerator to hang in the open throttle position and that the accident was caused by this defective condition of the bus. There is evidence to support the finding that the accelerator hung in the open throttle position. Ms. Foster and other witnesses testified that the bus seemed to gain speed before finally impacting with the building, even though she took her foot off the accelerator and applied the brakes.
Appellant Navistar relies heavily on the decision in LoBrono v. Jean DuCote Volkswagon, Inc., 403 So.2d 723 (La.1981), for the proposition that plaintiffs have not met their burden of proving that this accelerator was defective. In LoBrono, there was an allegation that the accelerator on a vehicle hung up and caused the driver to have a collision with a neighbor's house. The vehicle was a year old and had 11,000 miles on it at the time of the accident. The present case is distinguishable from LoBrono. In LoBrono, the trial court found as a fact that the driver stepped on the accelerator instead of the brake and caused the vehicle to speed out of control. In this *824 case, the trial court found that Ms. Foster did not step on the accelerator. This finding of fact is derived from Ms. Foster's testimony as corroborated by other witnesses. Ms. LoBrono's testimony was uncorroborated. Therefore, we find that the LoBrono case is distinguishable on the facts and evidence and not controlling.
On appeal, we cannot disturb the findings of fact of the trial judge unless those findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). This case does not present a situation of a clearly erroneous finding of fact. Therefore, there is no merit to Navistar's assignments of error nos. 1 and 3.

Comparative Fault and Sudden Emergency
In assignments of error nos. 4 and 6, Navistar asserts that the trial judge was erroneous in holding Ollie Foster and the school board free from fault. The recovery of a plaintiff may be reduced under the principles of comparative fault in certain categories of cases. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those types of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safer product. Bell v. Jet Wheelblast, 462 So.2d 166 (La.1985).
The trial judge specifically found that Ollie Foster was not negligent under the "sudden emergency doctrine", and that in any event this was not a case in which her fault should reduce her recovery. The determination and apportionment of fault is a finding of fact which should not be disturbed unless it is clearly wrong. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir. 1985); Towns v. Georgia Casualty & Surety Company, 459 So.2d 124 (La.App. 2d Cir.1984).
When one is confronted with a "sudden emergency", this fact is considered in determining whether one is contributorily or comparatively negligent. Mohr v. State Farm Insurance Company, 528 So.2d 144 (La.1988); Garsee v. Western Casualty, 437 So.2d 933 (La.App. 2d Cir.1983). Whether the plaintiff was in an emergency situation is a factor to be considered in assessing whether she acted reasonably under the circumstances.
The issue then is whether it was negligence or fault on the part of Ms. Foster to fail to pull the emergency brake, the kill switch or shift the bus into a different gear when confronted with a "sudden emergency". First, Ms. Foster consciously decided to drive the bus into the parking lot rather than take it down the busy Greenwood Road. She then steered the bus around parked vehicles. She repeatedly applied the service brakes. She states that she pulled the kill switch shortly before impact with the building. There is testimony in the record that she drove the bus approximately 3/10ths of a mile before impact with the building. The whole incident probably took less than one minute. Because Ms. Foster was occupied during much of the time with screaming children and steering the bus through the parking lot and due to the fact she was confronted with an emergency situation, we find that the trial court was correct in concluding that Ms. Foster was not negligent in her operation of the vehicle in failing to take other emergency measures. Because we find that Ms. Foster was not negligent, we need not consider whether this case presents a situation in which comparative negligence should be applied to reduce recovery under the rationale of Bell v. Jet Wheelblast, supra.
Navistar further asserts that it was error to not find the school board independently negligent. It is argued that the school board was negligent in not properly training Ms. Foster in the use of a diesel bus and in emergency procedures. We find this assertion wholly without merit. The school board conducted yearly courses in driver safety. The course was put on by the state and lasted approximately eight hours per year. During the course, the drivers were taken out on two separate occasions for instruction in the *825 safe operation of busses. The school board required a physical examination of all its drivers before each school year. Although there is evidence of two prior accidents by Ms. Foster, the school board was reasonable in not disciplining Ms. Foster. Her prior accidents were due to mechanical malfunctions and were not her fault. Before the bus in question was delivered to Ms. Foster, the school board inspected it and showed her how to operate it. She had been driving for 18 years and it was not necessary to have a detailed presentation on the operation of the bus. The bus was an automatic transmission diesel bus. Ms. Foster had previously driven gasoline buses. There is no significant difference in the operation of this bus that would warrant an extensive retraining session. This assignment of error is without merit.

Other Defendants' Fault
It is argued that American Transportation was negligent in installing a rubber mat over the accelerator stop and that Craig Equipment was negligent in failing to properly inspect the bus and in making adjustments to the accelerator.
American Transportation installed a rubber mat in the bus. The mat was placed over the accelerator stop. There is no question that the mat should not have been installed over the accelerator stop. Instead, a hole should have been cut in the mat so that it could fit around the accelerator stop.
Mechanics from Craig Equipment Company testified that before delivery to the school board adjustments were made to the acceleration system on the bus. A mechanic for Craig Equipment, William Wood, testified that he had to adjust the idle speed of the bus. He stated that he became aware of a problem with the idle speed because the bus would not idle during the state inspection. He adjusted the idle speed so that the bus would idle between 600 and 700 r.p.m.'s, which was the proper idle speed for the bus. The bus was equipped with a tachometer and he was able to monitor the idle speed with no difficulty. This adjustment had nothing to do with the accelerator pedal.
Larry Raburn and Robert Ferguson were called by Craig as witnesses at trial. The court stenographer lost the notes to that testimony. Therefore, our review of their testimony is by way of stipulation. It is stipulated that these two witnesses testified about repairs they accomplished on the bus. Mr. Raburn testified that while driving the bus to have a grill guard installed, he noticed that the bus would not get maximum throttle. He stated that he, with the aid of Mr. Ferguson, adjusted the accelerator so that full throttle could be achieved. Alvin Doyle, an expert witness at trial, stated that these adjustments could not contribute to the accelerator pedal being misaligned with the accelerator stop.
The trial judge specifically found that the misalignment of the accelerator with the stop was allowing the accelerator to slide past the stop. The placement of the mat over the stop by American Transportation did not contribute to the misalignment, nor did the adjustments made by Craig contribute to the misalignment. Though the placement of the mat was improper, the trial judge found that the placement of the mat was not a cause of the accident.
Again, we are governed by the principle that a finding of fault is a finding of fact which should not be disturbed unless clearly wrong. Finley v. Bass and Towns v. Georgia Casualty & Surety Co., supra. Here the judge found as a factual matter that the placement of the mat by American Transportation and adjustments made by Craig did not contribute to the misaligned accelerator pedal. He found that these actions did not cause the accelerator to hang up. These findings are not clearly wrong. Navistar's assignments of error nos. 7 and 8 are without merit.

Damages of Ollie Foster
After the accident, Ollie Foster was taken to the emergency room for treatment. She received five stitches in her right shoulder and four stitches in her arm. She had various contusions and abrasions from being struck by bricks and glass. *826 She was given a neck collar and tranquilizers and was released from the emergency room. She went to her regular doctor, Dr. Combs, on May 5, 1983. She was diagnosed as having a mild cervical strain and was prescribed pain pills and tranquilizers. By June 14, 1983, Dr. Combs felt that she could be released from further treatment. But, on June 30, 1983, Ms. Foster returned to his office with complaints of anxiety. Again, she was treated. She did not return to see Dr. Combs until October 11, 1984, some 16 months later. She was still complaining of neck pain, so he referred her to an orthopedist. She saw Dr. Joffrion, an orthopedic surgeon, on October 12, 1984. She complained of neck problems and gave a history of the bus accident. She told Dr. Joffrion that her neck had been better in warm weather but was flaring up again. Dr. Joffrion diagnosed her as suffering from myofacial cervical spine syndrome. In his words, this diagnosis is a non-specific diagnosis saying that the lady had trouble with her neck from whatever cause. He could not relate Ms. Foster's problems to the accident. He did not see her again until November of 1985. Again, she had neck pain and again he could not relate this pain to the accident. For her pain, suffering and mental anguish as a result of the accident, Ms. Foster was awarded $10,000.
On appeal, Navistar asserts that the award is excessive. Ollie Foster alleges that the award was inadequate. We affirm the award.
In a tort action the trial judge has much discretion to affix the amount of general damages and the award will not be modified unless an abuse of discretion is shown. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Perkins v. Certa, 469 So.2d 359 (La.App. 2d Cir.1985); Howery v. Linton, 452 So.2d 295 (La.App. 2d Cir.1984).
In Johnmeyer v. Creel, 499 So.2d 571 (La.App. 2d Cir.1986), we awarded a plaintiff with similar injuries $10,000 in general damages. In Johnmeyer the plaintiff suffered with a cervical strain for approximately two months. We feel that Ms. Foster has similarly shown a mild cervical strain with a duration of a little more than two months. Her visits to the orthopedic surgeon in 1984 and 1985 were not related to the bus accident by the orthopedist. She was released to return to work on June 14, 1983. We find that she was probably recovered sometime in July of 1983, since her last visit to Dr. Combs was on June 30, 1983 before her return over a year later. We held in Johnmeyer that $10,000 was the maximum award that could be awarded for a mild cervical strain that lasted about as long as the strain suffered by Ms. Foster in this case.
Ms. Foster also suffered from cuts and bruises caused by the bricks and glass hitting her. The trial judge took this into consideration in his award to her.
Ms. Foster asserts in her appeal that the trial court did not award damages for pre-impact fright, relying on Carroll v. State Farm Insurance Company, 427 So.2d 24 (La.App. 3d Cir.1983) and Haley v. Pan American World Airways, 746 F.2d 311 (5th Cir.1984), as authority for the proposition that pre-impact damages are a compensable element of damages in Louisiana.
Carroll v. State Farm holds that mental anguish may be a compensable item of damage when there has been damage to the plaintiff's property, even if the plaintiff did not suffer physical injuries. Also, mental anguish caused by the ordeal is compensable. The plaintiff in Carroll was awarded $7,500 in mental anguish after a boat struck her pier and nearly struck her. There was considerable evidence of her hysteria after the accident.
Haley v. Pan American deals with the mental anguish suffered by those aboard an airplane before it collides with the ground. This anguish, termed "pre-impact mental anguish", was held compensable in Haley.
While it is true that Ms. Foster may have suffered anguish before impact with the building, the trial court's award adequately compensates her for any anguish suffered. This element of damage was not specifically addressed by the trial judge in his reasons for judgment, but neither was it specifically alleged. In the award of damages, the judge stated that the award was for *827 pain, suffering and mental anguish suffered as a result of this accident and the amount awarded adequately compensates for this loss.
The award of $10,000 general damages rendered by the trial judge in favor of Ollie Foster is affirmed.

Damages to Abe Busada
The trial court awarded Mr. Busada $8,000 in lost rentals to his building. The court determined that he lost $2,000 per month in rent from May 1, 1983 to the end of August 1983. United Pacific Insurance Company paid him $31,166.71 before August 1. The trial judge determined that Mr. Busada could have repaired his building and leased it shortly after receipt of these funds. Therefore, he refused to award damages for rental after August of 1983. Navistar and others assert that the award is excessive and Mr. Busada asserts that the award is inadequate. We affirm.
On appeal, Mr. Busada contends that he proved that additional damages were caused to the building other than those awarded by the trial court. At trial, he called two experts as witnesses, Wes Burdine and John Gentry. Both of these witnesses gave estimates as to the cost of repairing Mr. Busada's building.
Based on Mr. Burdine's estimate, United Pacific paid Mr. Busada $31,166.71. At trial, Mr. Busada introduced evidence of additional damages to the building through the testimony of Mr. Gentry. The trial judge stated that he found the testimony of Mr. Burdine to be credible and rejected the evidence of additional damages. Credibility of witnesses is in the trial judge's discretion and should not be disturbed unless manifestly erroneous. Canter v. Koehring, supra; Bailey v. Bailey, 448 So.2d 808 (La.App. 2d Cir.1984).
The primary objective when property is damaged by the fault of another is to restore the property as nearly as possible to the state it was in immediately proceeding the accident. Coleman v. Victor, 326 So.2d 344 (La.1976). The trial judge obviously believed that Mr. Burdine's estimate would accomplish this goal. We find no error in this judgment.
Mr. Busada claims that he was not able to rent his building at $2,000 a month because of the damages. He states that although he was later able to lease his building, he had to reduce the rent to $1,500 a month because of the damage. The record reveals that Mr. Busada did not repair the building with the funds tendered to him by the insurance company. Instead, he allowed his lessee to make the repairs to the building and reduced the rental. Mr. Busada was adequately compensated for his monetary loss by receipt of the amount necessary to make repairs together with the trial court's award of $8,000 for lost rental.
Finally, he claims that he suffered $25,000 in damages due to mental anguish. We find his claim without merit. At trial, Mr. Busada stated that the building had some sentimental value to him but this testimony was impeached when he admitted to stating in his deposition that the only value the building had to him was that it produced income through rent. He produced no evidence tending to show that he was unusually disturbed over the damage to his property.
Appellant Navistar argues that the award to Busada is excessive, particularly in that his proof of lost rental was speculative since the building was vacant at the time of the accident. However, Busada established that he was engaged in negotiations which would likely have resulted in a lease if the building had not been damaged.
Appellants also assert that Mr. Busada is not entitled to the entire amount awarded for damages because his wife did not join in the suit and he was not the proper party to enforce a community debt. This argument is without merit. See LSA-C.C.P. Art. 686.
We find that the judge's award of damages to Mr. Busada is adequate and not excessive. Therefore, the award is affirmed.

*828 Recall Evidence

Finally, we turn to Navistar's assertion that the trial judge erred in allowing evidence of recalls at trial. While it is true that the trial judge ruled evidence of a 1984 recall campaign to be admissible, he found that the 1984 defect was not proven to exist in this bus. Therefore, it is not necessary to consider this issue since Navistar was not prejudiced by its admission and any error was harmless. Malmay v. Sizemor, 474 So.2d 1358 (La.App. 2d Cir. 1985); Ross v. Noble, 442 So.2d 1180 (La. App. 1st Cir.1983).

Attorneys Fees
Craig Equipment Company and Caddo Parish School Board prayed for additional attorneys fees as a result of this appeal. We fix additional attorneys fees for the school board which has taken the lead in this litigation at $2,000 and for Craig at $1,000, and will amend the judgment accordingly.

Conclusion
For the foregoing reasons, the judgment of the trial court is amended to increase the attorney's fees awarded to the Caddo Parish School Board by $2,000 and the attorney's fees awarded to Craig Equipment Company by $1,000, and, as amended, is affirmed. The costs of the appeals are assessed to Navistar International Transportation Corporation.
NOTES
[1] United States Fidelity & Guaranty did not participate in the trial. It had a coverage dispute with its insured, which the trial judge decided to rule on after the liability of Craig was determined.
[2] International changed its name during the course of this litigation and filed a motion to have the record reflect its correct name as Navistar International Transportation Corporation.
[3] The claims of Bruce Busada were dismissed during trial. It was determined that he had no ownership interest in the building. His attorney added him as a party because checks were issued to him as "Payee" by United Pacific Insurance Company. He testified that he delivered these funds to his father and had no other interest in the litigation.